Otis L. Davis v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-059-CR
No. 10-02-060-CR

     OTIS L. DAVIS,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 363rd District Court
Dallas County, Texas
Trial Court Nos. F01-54582-W and F01-54583-W
                                                                                                                

O P I N I O N
                                                                                                                

      Otis Leonard Davis appeals his conviction by a jury of the offenses of unlawful possession
of heroin of four grams or more but less than 200 grams, with intent to deliver, and unlawful
possession of cocaine in an amount of less than 1 gram. The jury, finding two enhancement
paragraphs true, assessed Davis's punishment at ninety-nine years in the Texas Department of
Criminal Justice, Institutional Division, for the heroin offense and twenty years in the Texas
Department of Criminal Justice, Institutional Division, for the cocaine offense. Davis contends
in five points that: (1) the trial court erred by imposing a sentence grossly disproportionate to the
offense, resulting in cruel and unusual punishment, in violation of the Eighth Amendment of the
United States Constitution, article I, section 13, of the Texas Constitution, and article 1.09 of the
Texas Code of Criminal Procedure; (2) the trial court erred by denying his motion for new trial
due to the jury engaging in misconduct and failing to follow the law and instructions given in the
court’s charge; (3) Texas rule of evidence 606(b) is unconstitutional on its face and as applied to
him; (4) he was denied effective assistance of counsel in the trial court in violation of the Sixth
Amendment of the United States Constitution and article I, section 10 of the Texas Constitution;
and (5) the trial court erred in denying his motion to suppress evidence obtained in a warrantless
search and warrantless arrest. We affirm.
CRUEL AND UNUSUAL PUNISHMENT
      Davis contends in point one that the trial court erred by imposing a sentence grossly
disproportionate to the offense, resulting in cruel and unusual punishment, in violation of the
Eighth Amendment of the United States Constitution; article I, section 13 of the Texas
Constitution; and article 1.09 of the Texas Code of Criminal Procedure. It is undisputed that the
sentences imposed by the trial court are within the range of punishment authorized by the
legislature.
      A gross disproportionality principle is applicable to sentences for terms of years. Lockyer v.
Andrade, ___U.S. ___, ___, 123 S. Ct. 1166, 1173, 155 L. Ed. 2d 144, 156 (2003). The precise
contours of this principle are unclear, but it is applicable only in the “exceedingly rare” and
“extreme” case. Id.
      We must first make a comparison of the gravity of Davis’s case against the severity of his
sentence. Vrba v. State, 69 S.W.3d 713, 724 (Tex. App.—Waco 2002, no pet.). In considering
whether his sentence is grossly disproportionate, we consider not only the present offense but also
his criminal history. Id. Evidence showed that Davis possessed 4.1 grams of heroin and less than
one gram of cocaine. Davis had one prior conviction for possession of cocaine, three prior
convictions for burglary of a building, and two prior convictions for evading arrest or detention. 
We hold that Davis’s sentence is not grossly disproportionate in violation of the Eighth
Amendment of the United States Constitution. See Harmelin v. Michigan, 501 U.S. 957, 111 S.
Ct. 2680, 115 L. Ed. 2d 836 (1991). Because we have found that the sentence is not grossly
disproportionate, it is not necessary for us to consider other factors. Vrba, 69 S.W.3d at 724.
      Davis urges that the sentence is grossly disproportionate, emphasizing the small amount of
heroin and cocaine he possessed and the non-violent nature of the prior convictions that he had. 
In Harmelin, the defendant received a mandatory sentence of life without parole for the offense
of possession of a large amount of cocaine. Harmelin, 501 U.S. at 961, 111 S. Ct. at 2684, 115
L. Ed. 2d at 843. Two justices, Scalia and Rehnquist, held that there is no such proportionality
principle mandated by the Eighth Amendment in non-capital cases. Id. at 965, 111 S. Ct. at 2686,
115 L. Ed. 2d at 846. In a concurring opinion, Justice Kennedy, joined by O’Connor and Souter,
held that possession, use, and distribution of illegal drugs represent “one of the greatest problems
affecting the health and welfare of our population” and that any suggestion that such a crime is
nonviolent or victimless is false to the point of absurdity. Id. at 1002, 111 S. Ct. at 2705, 115 L.
Ed. 2d at 870. They said that drugs relate to crime in the following ways: 1.) a drug user may
commit a crime because of drug-induced changes in physiological function, cognitive ability, and
mood; 2.) a drug user may commit crime to obtain money to buy drugs; and 3.) violent crime may
occur as part of the drug business or culture. Id. at 1002, 111 S. Ct. at 2706, 115 L. Ed. 2d at
870. They noted that studies bear out those possibilities and demonstrate a direct connection
between illegal drugs and crimes of violence. Id. at 1003, 111 S. Ct. at 2706, 115 L. Ed. 2d at
870.
      Davis urges us to engage in a comparative analysis by comparing his sentence with sentences
imposed on others in Texas, as well as sentences imposed on others for the same crime in other
jurisdictions, as discussed in Solem v. Helm, 463 U.S. 277, 290-92, 103 S. Ct. 3001, 3010, 77
L. Ed. 2d 637, 649-50 (1983). However, as we have previously noted, such a comparative
analysis is not required where we do not find the sentence to be disproportionate. McGruder v.
Puckett, 954 F.2d 313, 316 (5th Cir. 1992). We overrule point one.
JURY MISCONDUCT
      Davis urges in point two that the trial court erred by denying his motion for new trial due to
the jury engaging in misconduct and failing to follow the law and instructions given in the court’s
charge. At the motion for new trial, Patrick Phillip Robertson, an attorney who received the
verdict in the absence of Davis’s trial attorney, testified that he, the prosecuting attorney, and an
investigator went to talk to some of the jurors after the verdict was received. He said that a tall
African-American juror said that the jury had definitely considered parole and when the defendant
would be getting out. The investigator testified that the African-American juror with whom Mr.
Robertson was talking, when asked if the amount of time the jury assessed Davis had anything to
do with the amount of time he would serve or about his being on parole, replied, “Absolutely.”
      A jury’s discussion of parole constitutes reversible error when a defendant shows (1) a
misstatement of the law; (2) asserted as a fact; (3) by one professing to know the law; (4) which
is relied upon by other jurors; (5) who for that reason changed their vote to a harsher punishment. 
Sneed v. State, 670 S.W.2d 262, 266 (Tex. Crim. App. 1984). Davis’s proof shows none of
those. Consequently, he has shown no reversible error.
      Davis relies in part upon the case of Reese v. State, 772 S.W.2d 288 (Tex. App.—Waco 1989,
pet. ref’d). We find that case to be distinguishable. In Reese, a juror, Wilda Grantham, would
have testified, had the testimony not been excluded at the defendant’s motion for new trial, that
another juror mentioned the parole law during deliberations on punishment, stating that the
defendant would only serve five to ten years in prison, even if the jury assessed a ninety-nine year
sentence. Id. at 289. Grantham would have indicated that the parole discussion was the main
source of the jury’s deliberation on punishment. Id. She would have stated that the other juror
seemed “sure of her position,” appeared “adamant,” and expressed her opinion based on facts and
knowledge gained through someone connected with the prison system. Id. Grantham would have
said that she relied upon the juror’s assertions and changed her vote on punishment from thirty
years and a fine to ninety-nine years and a $10,000 fine. Id. Holding that the trial court erred by
excluding Grantham’s testimony and affidavit because it was admissible under what at that time
was an exception in Rule 606(b), which allowed a juror to testify to any matter relevant to the
validity of the verdict, we abated the appeal and remanded for a new hearing on the defendant’s
motion for new trial. Id. at 291. Since we issued our opinion in Reese, the rule has been
amended, omitting the language allowing a juror to testify about any matter relevant to the validity
of the verdict.
      In Reese, the juror’s potential testimony included all of the elements of Sneed. Grantham’s
testimony and affidavit would have shown a misstatement of the law, asserted as a fact, by one
professing to know the law, which is relied upon by other jurors, who for that reason changed
their vote to a harsher punishment. By contrast, the evidence presented by Davis, while showing
that the jury discussed application of the parole law to him, did not show any misstatement of the
law, that such a misstatement was asserted as a fact by one professing to know the law, or that any
juror relied on the misstatement and changed his or her vote to a harsher punishment. Because
the testimony offered by Davis does not meet the requirements of Sneed, we hold that he has
shown no reversible error in connection with any discussion of the parole law on the part of the
jury.
      Another court of appeals has held that the most recent amendment to Rule 606(b) abrogated
the rule set forth in Sneed. Hart v. State, 15 S.W.3d 117, 123 (Tex. App.—Texarkana 2000, pet.
ref’d). The court relied on Hines v. State, 3 S.W.3d 618, 621 (Tex. App.—Texarkana 1999, pet.
ref’d). Apparently, in saying that the opinion in Sneed has been abrogated, the court was saying
that since the most recent amendment to Rule 606(b), jurors may only testify as to whether outside
influence was improperly brought to bear upon any juror. Hines, 3 S.W.3d at 621. The Texas
Court of Criminal Appeals has not yet decided whether Sneed continues to be viable. See Salazar
v. State, 38 S.W.3d 141, 147 n. 3 (Tex. Crim. App. 2001), cert. denied, 122 S. Ct. 127 (2001).
      If, as suggested by Hart and Hines, Sneed is no longer viable because jurors may no longer
establish jury misconduct except for outside influence being improperly brought to bear upon a
juror, Davis’s point must fail because he has not asserted that any outside influence was
wrongfully brought to bear upon a juror. On the other hand, if Sneed is still viable, his claim must
fail because he has not met its test for establishing jury misconduct. We overrule point two.
CONSTITUTIONALITY—TEXAS RULE OF EVIDENCE 606(b)
      Davis insists in point three that Texas Rule of Evidence 606(b) is unconstitutional on its face
and as applied to him. Rule 606(b) limits a juror’s testimony with respect to the jury’s
deliberations. The rule is not unconstitutional under the Texas Constitution. Golden Eagle
Archery, Inc. v. Jackson, 24 S.W.3d 362, 374-75 (Tex. 2000). Davis argues that while the rule
may be constitutional in civil cases, it is unconstitutional in criminal cases, although he
acknowledges that there is no authority to that effect. We note that the United States Supreme
Court ruled, in a criminal case, that the federal rule, which is quite similar, does not violate the
right to a fair trial guaranteed by the United States Constitution. Tanner v. United States, 483
U.S. 107, 127, 107 S. Ct. 2739, 2751, 97 L. Ed. 2d 90, 111 (1987); see also Glover v. State,
___S.W.3d___, 2003 WL 21357258 (Tex. App.—Waco June 11, 2003, no pet. h.) (holding that
Rule 606(b) did not violate Glover’s right to due process under the Fifth and Fourteenth
Amendments to the United States Constitution).
      Davis also relies upon Reese as authority for this point. We note that Reese is distinguishable
with respect to this point as well as point two. In interpreting Rule 606(b) in Reese, we held that
interpreting it in such a way as to prevent a defendant from showing that the jury received “other
evidence” would violate the defendant’s right to confront and cross-examine witnesses. Reese,
772 S.W.2d at 290-91. In Reese, a juror, as noted above, made statements that we held could
constitute “other evidence.” In the case at bar, while there is evidence that the jury improperly
discussed application of the parole law to Davis, there is nothing to show that the jury received
“other evidence,” nor evidence meeting the requirements of the Sneed test. The record does not
reflect that the trial court violated Davis’s right of confrontation by excluding such testimony, only
that Davis presented no such testimony. Even if such testimony would be inadmissible under the
rule, the defendant, in order to show a violation of his right to confrontation, must show that the
testimony would have supported his claim under Sneed. Even if the trial court held such evidence
to be inadmissible based upon Rule 606(b), and such exclusion violated Davis’s rights under the
Constitution, in the absence of the preservation of such testimony by a bill of exceptions, we are
unable to determine whether the error was harmless constitutional error under Rule 44.2(a) of the
Texas Rules of Appellate Procedure. We overrule point three.
MOTION TO SUPPRESS—STANDING
      Davis insists in point five that the trial court erred by denying his motion to suppress evidence
obtained as a result of a warrantless search and seizure. Standing is an individual's right to
complain about an allegedly illegal governmental search, and thus to exclude evidence. To have
standing to complain about the legality of a governmental search, a person must show that he
personally had a reasonable expectation of privacy. Rakas v. Illinois, 439 U.S. 128, 143, 99 S.
Ct. 421, 430, 58 L. Ed. 2d 387, 401 (1978); Villarreal v. State, 935 S.W.2d 134, 137 (Tex.
Crim. App. 1996).
      The purpose of both the Fourth Amendment of the United States Constitution and article I,
section 9, of the Texas Constitution "is to safeguard an individual's legitimate expectation of
privacy from unreasonable governmental intrusions." Villarreal, 935 S.W.2d at 138. An accused
has standing, under both constitutional provisions, to challenge the admission of evidence obtained
by a governmental intrusion only if he or she had a legitimate expectation of privacy in the place
invaded. Id. Furthermore, the accused, because he or she has greater access to the relevant
evidence, has the burden of proving facts establishing a legitimate expectation of privacy. Id. To
carry this burden, the accused must normally prove: (a) that by his or her conduct, the accused
exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve
something as private; and (b) that circumstances existed under which society was prepared to
recognize the accused’s subjective expectation as objectively reasonable. Id. The following, at
least, are relevant to the court's determination of whether the accused's subjective expectation was
one that society was prepared to recognize as objectively reasonable: (1) whether the accused had
a property or possessory interest in the place invaded; (2) whether the accused was legitimately
in the place invaded; (3) whether the accused had complete dominion or control and the right to
exclude others; (4) whether, before the intrusion, the accused took normal precautions customarily
taken by those seeking privacy; (5) whether the accused put the place to some private use; and (6)
whether the accused’s claim of privacy is consistent with historical notions of privacy. Id.
      A trial court's ruling on a motion to suppress lies within the sound discretion of that court. 
Id. At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses
and the weight to be given their testimony. Id. The reason for this rule is that the trial court, who
observes the demeanor and appearance of the witnesses, is in a better position to determine their
credibility than the appellate court is by reading their testimony as it appears in the record. Id. 
Therefore, an appellate court must view the record evidence and all reasonable inferences
therefrom in the light most favorable to the trial court's ruling, and must sustain the trial court's
ruling if it is reasonably supported by the record and is correct on any theory of law applicable
to the case. Id.
      Davis testified that although he did not own the house that was searched, he had clothes there
and slept there two or three nights out of the week. He indicated that he did not know who owned
the house. He stated that he had keys to the house and could go in and out and that he had the
ability to let people come in and out of the place. He said he owned a mattress in the house.
      Davis acknowledged that he had previously been convicted of four felony offenses. He
related that the person who lived at the house was an individual named Walter Nicholson. He
acknowledged that it was Nicholson who gave him the key to the house so that he could have a
place to sleep. He had no paperwork to support his right to be at the house. No key was found
at the time of the search and Davis’s arrest. Davis also acknowledged that he lives with his
mother off and on at another location. He stated that he did not know what another person who
was at the house at the time of the search was doing there. He stated that the last time he had
spent the night at the house was the Saturday night prior to the search, which occurred on Friday.
      A reasonable factfinder could have determined from the evidence that Davis had no property
or possessory interest in the premises; that he had no legitimate right to be present there; that,
despite his testimony that he had the ability to let people in and out of the premises, he had no
right to exclude anyone; that he did not take normal precautions taken by those seeking privacy;
that he put the place to some private use; and that his claim of privacy is not consistent with
historical notions of privacy.
      The trial court explicitly found that Davis did not have a legal right from anyone with
authority to be present on the premises and that he had no right to exclude others from the
premises; that he had no possessory or ownership rights in the premises; that Davis had no
reasonable expectation of privacy on the premises as a trespasser; and that he had no standing to
object to a search of the premises.
      Davis asserts that he did have standing because the evidence showed that, while he did not
own the house, he had a key to it, could come and go as he pleased, spent several nights a week
there, and he had the right to exclude others from the property. However, based upon the
evidence, the trial court as factfinder could have found that Davis did not obtain the key from
anyone with any legitimate ownership or possessory interest in the property, or that Davis had no
key at all, and that he had no right to exclude others from the property.
      Davis relies upon Minnesota v. Olson, 495 U.S. 91, 96-97, 110 S. Ct. 1684, 1688, 109 L.
Ed. 2d 85 (1990) and Black v. State, 776 S.W.2d 700, 701 (Tex. App.—Dallas 1989, pet. ref’d). 
In Olson, the Court held that an overnight guest had standing to assert his or her rights under the
Fourth Amendment because an overnight guest has an expectation of privacy that society is
prepared to recognize as reasonable. Olson, 495 U.S. at 96-97, 100, 110 S. Ct. at 1687-88, 1690,
109 L. Ed. 2d 93, 95. Olson was the houseguest of the owner of the premises. Id. at 97, n. 6,
110 S. Ct. at 1688, n. 6, 109 L. Ed. 2d at 94, n. 6. In the case at bar, the trial court could have
reasonably believed that Davis was not the houseguest of either the owner or anyone with a
legitimate property or possessory interest in the premises. In Black, the court held that as a
temporary, not an overnight, guest without any property or possessory interest in the premises,
Black had no reasonable expectation of privacy, and no standing to assert Fourth Amendment
rights. Black, 776 S.W.2d at 701. Apparently, Black was a guest of the owner of the premises
searched. In the case at bar, as previously noted, there is no showing that the party that
supposedly gave permission for Davis to be at the house was the owner or anyone having any
authority to authorize Davis to be at the house. Black supports and is not in conflict with this
opinion.
      Because the record supports the trial court’s finding that Davis had no legitimate expectation
of privacy in the residence, we need not consider his claims concerning whether any search of the
residence by the officers was reasonable. Minnesota v. Carter, 525 U.S. 83, 91, 119 S. Ct. 469,
474, 142 L. Ed. 2d 373, 381 (1998). Davis makes no separate argument or authority with respect
to his claims regarding the Texas Constitution. His claim that the evidence is inadmissible under
article 38.23 of the Texas Code of Criminal Procedure is based upon his claims regarding the
violation of his constitutional rights. We overrule point five.
INEFFECTIVE ASSISTANCE OF COUNSEL
      Davis asserts in point four that he was denied effective assistance of counsel in violation of
the Sixth Amendment of the United States Constitution and article I, section 10 of the Texas
Constitution. We apply a two-pronged test to ineffective assistance of counsel claims. Wiggins
v. Smith, ___U.S.___, ___, 123 S. Ct. 2527, 2535, ___L. Ed. 2d___, ___ (2003); Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson v. State, 9 S.W.3d
808, 812 (Tex. Crim. App. 1999). First, appellant must show that his counsel’s performance was
deficient; second, appellant must show the deficient performance prejudiced the defense. Wiggins,
123 S. Ct. at 2535; Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.
      In evaluating the effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case. Thompson, 9 S.W.3d at 813. A
defendant must demonstrate that counsel’s representation fell below an objective standard of
reasonableness and prevailing professional norms at the time of the alleged error. Wiggins, 123
S. Ct. at 2535; Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065. “[C]ounsel is strongly
presumed to have rendered adequate assistance and made all significant decisions in the exercise
of reasonable professional judgment.” Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. An
allegation of ineffective assistance must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d at 814. Our scrutiny
of counsel’s performance must be highly deferential, and every effort must be made to eliminate
the distorting effects of hindsight. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.
      The second prong of Strickland requires a showing that counsel’s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. Id. at 686-87, 104
S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for
counsel’s unprofessional errors, the result of the proceeding would have been different. Id. at
694; 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. The ultimate focus of our inquiry must be on the fundamental
fairness of the proceeding whose result is being challenged. Id. at 697, 104 S. Ct. at 2070.
      Under normal circumstances, the record on direct appeal will not be sufficient to show that
counsel’s representation was so deficient and so lacking in tactical or strategic decision making
as to overcome the presumption that counsel’s conduct was reasonable and professional, and the
trial record rarely contains sufficient information to permit a reviewing court to fairly evaluate the
merits of such a serious allegation. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).
      Davis urges that his counsel was ineffective by: (1) failing to properly discuss and prepare the
case with him prior to trial in that counsel only met with him twice in six months; (2) failing to
adequately investigate in that counsel failed to photograph the scene of the arrest until one week
before trial, so that the photographs at trial did not accurately represent the scene at the time of
his arrest; (3) failing to seek out, interview, or obtain as a witness the man referred to during trial
as “Mr. X”, who was arrested at the same time and whom he requested to have as a witness; (4)
failing to thoroughly cross-examine several police officers, even though he informed counsel that
what the officers were saying was not accurate; and (5) telling him that he could not testify at trial
due to his prior record without attempting a motion to allow testimony free from impeachment in
accordance with the case of Theus v. State, 845 S.W.2d 874 (Tex. Crim. App. 1992).
      Davis contends that his counsel was ineffective for failing to properly discuss and prepare the
case with him prior to trial in that his counsel only met with him twice in six months; failing to
adequately investigate the case; and failing to obtain the testimony of “Mr. X,” whom he indicates
was at the house with him at the time of his arrest. At the hearing on the motion for new trial,
John Monych, the investigator for Davis’s trial counsel, testified that he could not recall
everything he did in preparation to assist counsel as a private investigator, because he had not been
asked to bring his file with him to court. He said he did go to the crime scene on several
occasions and took photographs. He indicated that he did not believe he had spoken to Davis’s
mother concerning his preparation for the trial, but he was unsure without looking at his notes. 
He offered his opinion that trial counsel had done an excellent job in his representation of Davis. 
He acknowledged that his photographs of the scene were taken one week prior to trial.
      At one point Monych testified that he had not ever gone out and looked for “Mr. X.” He
subsequently acknowledged that he believed he was asked to try to locate him, but that he did not
believe he was able to find him because they were very limited on “specifics on any kind of
identifying markers of that person.” He said that without looking at his notes he could not be
sure. He stated that he did not remember trial counsel telling him the man was in jail. Trial
counsel did not testify at the motion for new trial.
      Although the record contains Davis’s testimony that his counsel only met with him twice
before trial for a total of no more than fifteen minutes per visit, it does not contain what other
investigation was undertaken. Without his notes, the investigator could not recall what was done. 
As noted, trial counsel did not testify. Inasmuch as the record does not disclose what investigation
was made, Davis has failed to show that his counsel was ineffective for failing to properly
investigate his case. Without our knowing the scope of the investigation, we do not know whether
trial counsel’s failure to discuss the case further with Davis was reasonable or whether his failure
to discuss the case more with Davis or investigate the case more extensively would have caused
the result of his trial to be different.
      The only evidence in the record is that there was insufficient information for the investigator
to be able to find “Mr. X.” Although there is some discussion about “Mr. X” having been in jail,
the record does not reflect whether he was still in jail when the investigation began, only that
Davis’s mother had told his attorney that he was. Inasmuch as “Mr. X” did not testify at the
motion for new trial hearing, we also do not have the benefit of what his testimony would have
been and whether it would have produced a different result at Davis’s trial.
      Davis relies upon the case of Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 2d
158 (1932). We find that case to be distinguishable. In Powell, several African-American men
were accused of raping two white girls. Id. at 49, 53 S. Ct. at 57, 77 L. Ed. 2d at 160. 
Community sentiment ran so high that the military was used to help protect the defendants pending
their trial. Id. at 51, 53 S. Ct. at 57, 77 L. Ed. 2d at 161. Although the offense was a capital
offense, the trial court appointed no one specific attorney to represent them prior to trial. Id. at
56, 53 S. Ct. at 59, 77 L. Ed. 2d at 164. Even when the judge did make an appointment on the
day of trial, the nature of the appointment made was somewhat ambiguous. Id. at 57, 53 S. Ct.
at 60, 77 L. Ed. 2d at 165. As a result, no investigation of the case was conducted. All of the
defendants received the death penalty. Id. at 50, 58, 53 S. Ct. at 57, 60, 77 L. Ed. 2d at 161,
165. The United States Supreme Court held that the defendants were not accorded the right of
counsel in any substantial sense. Id. at 58, 53 S. Ct. at 60, 77 L. Ed. 2d at 165. In the case at
bar, counsel was appointed or employed more than a month before trial. A private investigator
was also involved in the case, but the full extent of their investigative efforts is not before us.
      Davis also complains that his counsel failed to thoroughly cross-examine several police
officers, even though he informed his counsel that what the officers were saying was not accurate. 
Inasmuch as Davis has failed to show what questions should have been asked and what the
officers’ testimony would have been, and inasmuch as our record does not contain the reason why
trial counsel did not ask further questions, Davis has failed to show that his counsel was ineffective
for failing to ask them further questions and has failed to show that if his counsel had asked more
questions the result of his trial would have been different. 
      Davis urges that his counsel was ineffective for failing to tell him that he could have testified
in the punishment phase of the trial because his “priors” were going to come out anyway and was
ineffective for failing to file a motion that would have allowed him to testify free of impeachment
by some or all of his prior convictions, a procedure discussed in Theus v. State, 845 S.W.2d 874
(Tex. Crim. App. 1992). Davis indicated that if he had testified at the punishment stage, his
testimony would be in the nature of exculpatory testimony concerning the offenses of which the
jury had already found him guilty. There is nothing in the record indicating counsel’s reason for
not advising Davis concerning his testifying in the punishment phase, nor his reason for not filing
a motion to allow Davis to testify at the guilt-innocence stage free from impeachment by some or
all of his prior convictions. Where, as here, the record is silent as to such reason, we are unable
to determine that counsel’s performance was deficient. See Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999).
      As previously indicated, Davis insists that his counsel was ineffective for failing to have the
scene photographed more than one week before trial. While he suggests that the scene had
changed from the time of his arrest until the photographs were taken, he does not refer us to any
evidence in the record suggesting how it had changed or how the delay in taking the pictures
would have prejudiced his defense and caused the result of the trial to be different. Further, the
record does not contain the reason why the pictures were not taken until the week before trial.
      Additionally, Davis complains that his counsel rebuffed his mother's efforts to obtain
witnesses who would have testified there was a barking dog in the neighborhood who would have
barked at police officers if they had been where they said they were in relation to the premises
searched. The lack of such testimony would not have affected the result of Davis's conviction,
inasmuch as we have held he has no standing to question the search of the premises. Further, the
record does not reflect counsel's reason for not calling any such witnesses. We overrule point
four.
      The judgment is affirmed.

                                                                   JOHN G. HILL
                                                                   Senior Justice

Before Justice Vance,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed August 20, 2003
Publish
[CRPM]