NO. 12-02-00229-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


JOE LEE BUSTER,                                           §     APPEAL FROM THE 369TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     HOUSTON COUNTY, TEXAS





OPINION
            Joe Lee Buster (“Appellant”) appeals his conviction for assault on a public servant. 
Appellant presents four issues on appeal. We affirm.

Background
            Appellant was charged by indictment with “intentionally, knowingly, and recklessly caus[ing]
bodily injury to Kathy Caldwell by striking her in the face” on or about July 20, 2000.


 The
indictment alleged that, at the time of the assault, Appellant knew that the victim, Kathy Caldwell
(“Caldwell”), was a public servant, a mental health liason employed by the University of Texas
Medical Branch (“UTMB”) and assigned to the Texas Department of Criminal Justice, Institutional
Division (“TDCJ”) in the psychology department of the Eastham Unit, and that Caldwell was
lawfully discharging an official duty, interviewing inmates.


 Further, the indictment contained two
felony enhancement paragraphs.
            Before trial, the court held a pretrial hearing. At the hearing, Appellant stated that he wished
to represent himself because he had an “insurmountable” conflict of interest with his attorney. The
judge acknowledged Appellant’s right to represent himself, and a colloquy occurred as follows:
 
              THE COURT:                   First off, what educational background do you have?
 
              [APPELLANT]:                 Sir, I’ve completed the 11th grade in school. I have got my GED. I have got two
years of college.
 
              THE COURT:                   Have you ever gone to – have any of those courses dealt with legal matters?
 
              [APPELLANT]:                No, sir, I haven’t.
 
              THE COURT:                   Well, the problem with an unlawyer representing someone or themselves – of
course, you can only represent yourself – is that there are certain procedural laws
– there are two types of laws. Basically there is procedural laws and there is
substantive laws.
 
              [APPELLANT]:                 Yes, sir.
 
              THE COURT:                    And someone that’s not trained in the law could well be in a position to have a
valuable procedural right or have a substantive right under substantive law. And the
danger of self representation is that without any training in the matter you would not
know –
 
              [APPELLANT]:                Right.
 
              THE COURT:                   – of that law or that procedural rule that could be used in your benefit.
 
              [APPELLANT]:                Yes.
 
              THE COURT:                    Do you understand that danger?
 
              [APPELLANT]:                I do, sir. Yes, sir, I do.
 
              THE COURT:                   Of course, the danger in representing yourself is that there will be some procedural
matter that you will overlook or some substantive right that you won’t know about,
and because you don’t know about it, you could be convicted. Whereas someone
that is trained in the law and experienced –
 
              [APPELLANT]:                Right.
 
              THE COURT:                   – in the law may well be able to keep you from being convicted. Do you understand
that danger?
 
              [APPELLANT]:                Yes, sir.

 
              THE COURT:                   Well, notwithstanding that danger, and the fact that you understand and know about
it, are you still insisting on representing yourself?
 
              [APPELLANT]:                Yes, sir, I do.
 
              THE COURT:                   Well, it appears to be that you – I have given you the admonitions required by the
Supreme Court in California v. Faretta. Counsel, do you know of any other
admonitions I need to give him? I am addressing the State and Defendant’s
attorney?
 
              [PROSECUTOR]:              None from the State, Your Honor.
 
              [DEFENSE COUNSEL]:  I don’t know of any others either, Your Honor.
 
              THE COURT:                   All right. Sir, I am going to permit you to represent yourself hereafter then, and I
am going to sign an order.
 
            At trial before another judge, Appellant appeared pro se and the trial court acknowledged
Appellant’s insistence on representing himself. Appellant pleaded “not guilty.” During opening
argument, Appellant admitted committing the offense, but argued that his actions were unintentional
because of his diminished capacity or mental incapacity. During Caldwell’s testimony, she
acknowledged that she is a mental health liason for UTMB assigned to the Eastham Unit. As a
mental health liason, Caldwell receives requests from inmates, interviews the inmates, and then
“triages” the inmates to either a psychologist or psychiatrist. On July 20, 2000, Caldwell was
interviewing inmates. During his interview with Caldwell, Appellant requested a transfer. After
Caldwell explained to Appellant that he did not qualify for a transfer, he became very upset and
slapped Caldwell in the face. At trial, Caldwell identified Appellant as the person who struck her
in the face on July 20, 2000 while she was working as a mental health liason for UTMB at the
Eastham Unit in Houston County, Texas. 
            Joy Jackson (“Jackson”) testified that she works for UTMB at the Eastham Unit. She stated
that she and Caldwell work in the same office and that she was present in the office when the alleged
assault occurred. Jackson identified Appellant as the person she knew as Joe Lee Buster who was
in the office when the incident occurred. Mark Hanley (“Hanley”), a lieutenant at the Eastham Unit,
testified that, on July 20, 2000, he arrived at the psychiatric unit and found Caldwell, in her office,
visibly shaking. She stated that she had been assaulted. Further, both Caldwell and Jackson declared
that offender Buster assaulted Caldwell. Hanley identified Appellant as offender Buster. Ed
Whitehead (“Whitehead”), employed by the Office of the Inspector General, Investigations Division,
at the Eastham Unit, spoke to the inmate suspected of assaulting Caldwell. Whitehead took a
statement from Appellant on July 24, 2000 in which Appellant admitted striking Caldwell. Further,
Appellant admitted going to the “psych” department to request a transfer from the Eastham Unit.
            During Appellant’s direct examination, Raphael Otero (“Otero”), a licensed psychologist,
testified that he gave Appellant a psychological evaluation in October of 1995 in order to determine
his competency to stand trial. According to Otero, Appellant was depressed, but not psychotic; his
thought content and process was logical, coherent, and relevant; his social judgment, intelligence,
memory, attention, and ability to solve problems were in the functional range; and he was able to
communicate effectively. Otero testified that additional stress or depression would only lead to
deeper levels of depression, “but not specifically to diminished capacity.” Further, Otero found no
signs of diminished capacity in Appellant. In relation to his opinion and recommendations, Otero
testified regarding his knowledge of Appellant’s prior offenses and charges.
            On August 7, 2002, a jury convicted Appellant of assault on a public servant as charged in
the indictment. During the punishment phase, Appellant pleaded “untrue” to two prior felony
convictions in Texas, attempted murder and murder with malice. Michael Merchant (“Merchant”),
a criminal investigator for the Special Prosecution Unit certified for fingerprint identification,
testified that Appellant’s known fingerprints matched the fingerprints of two penitentiary packets
submitted by the Texas Department of Public Safety. Appellant offered no witnesses. During
closing arguments, the State’s attorney referred to the two prior felony convictions in Texas, and
another offense committed in Arkansas, assault with intent to commit murder. The State requested
punishment of life in prison. Appellant argued that a life sentence was excessive. Finding both
enhancement allegations true, the jury assessed Appellant’s punishment at sixty years of
imprisonment.



 
Waiver of Counsel
            In his first issue, Appellant contends that there is insufficient evidence to support the finding
by the trial court that Appellant made a knowing and intelligent waiver of his Sixth Amendment
right to counsel. The State disagrees and argues that the trial court conducted the necessary hearing.
Applicable Law
            The Sixth and Fourteenth Amendments to the United States Constitution guarantee that an
accused may dispense with counsel and represent himself. Faretta v. California, 422 U.S. 806, 821,
95 S. Ct. 2525, 2534, 45 L. Ed. 2d 562 (1975); Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim.
App. 1997). In order to represent himself, the accused must “knowingly and intelligently” relinquish
the traditional benefits associated with the right to counsel. Faretta, 422 U.S. at 835, 95 S. Ct. at
2541. The accused should be made aware of the dangers and disadvantages of self-representation
so that the record will establish that “he knows what he is doing and his choice is made with eyes
open.” Id. (citing Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S. Ct. 236, 242,
87 L. Ed. 268 (1942)). In other words, to be constitutionally effective, the accused’s decision must
be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily. Collier, 959 S.W.2d
at 625. To assure protection of this fundamental right, appellate courts indulge every reasonable
presumption against waiver of counsel. Jordan v. State, 571 S.W.2d 883, 884 (Tex. Crim. App.
1978).
            While the court of criminal appeals does not require a formula or script to establish a
knowing and intelligent waiver, a trial judge must actively assess an accused’s waiver of counsel.
Blankenship v. State, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). According to the court of
criminal appeals, a valid waiver must be made “with an apprehension of the nature of the charges,
the statutory offenses included within them, the range of allowable punishments, thereunder, possible
defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a
broad understanding of the whole matter.” Id. (quoting Von Moltke v. Gillies, 332 U.S. 708, 723,
68 S. Ct. 316, 323, 92 L. Ed. 309 (1948)). Further, the trial court must admonish the accused of the
practical disadvantages of self-representation, including the fact that he would not be granted any
special consideration or relief from the technicalities of the rules of evidence and procedure solely
because he elects to appear pro se. Freeman v. State, 970 S.W.2d 55, 57 (Tex. App.–Tyler 1998,
no pet.) (citing Johnson v. State, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)). However, if the
accused persists in appearing pro se after being properly admonished, the trial court must grant his
wish. Id. at 58 (citing Johnson, 760 S.W.3d at 278). 
Analysis
            The record does not contain an arraignment of Appellant nor was he advised of the nature
of the charges against him and the statutory offenses included within those charges. See
Blankenship, 673 S.W.2d at 583. The judge did not advise Appellant of the range of allowable
punishments or of possible defenses to the charges and mitigating circumstances. See id. Further,
the judge did not specifically admonish Appellant that he would not be granted any relief from the
technicalities of the rules of evidence and procedure, although the judge’s comments may have
implicitly warned Appellant. See Freeman, 970 S.W.2d at 57 (citing Johnson, 760 S.W.2d at 279).
Even though the court of criminal appeals has refused to adopt a formula or script to determine a
knowing and intelligent waiver, we cannot conclude that an admonishment concerning unfamiliarity
with procedural and substantive laws and rights only and covering barely two pages of the statement
of facts is sufficient. Cf. Collier, 959 S.W.2d at 626 (admonishment sufficient where the trial court
elicited the accused’s educational background, and explained the granting of his request, the charges
against him, and the possible range of punishment, that he would not be granted special
consideration respecting the technical rules of evidence and procedure, and that he might be
disadvantaged at trial and appeal); Burgess v. State, 816 S.W.2d 424, 427 (Tex. Crim. App. 1991)
(admonishment sufficient where the trial court elicited the accused’s educational background and
previous self-representation, and advised the accused that the rules of evidence and procedure would
apply to him as to a lawyer, that it would treat his objections the same as a lawyer, that he would be
under the same rules of procedure and conduct required of a lawyer, and that it would not “cut [him]
any slack” and would hold him to the same standard as a lawyer).
            Because Appellant was improperly and inadequately admonished by the trial judge, his
waiver of counsel was not made knowingly and intelligently and, thus, was constitutionally
ineffective. See Collier, 959 S.W.2d at 625. Accordingly, the trial court erred by failing to
admonish Appellant sufficiently. However, we must determine if the trial court’s error was harmful.
 
Harm Analysis
            In cases of constitutional error, a reviewing court applies Texas Rule of Appellate Procedure
44.2(a). Fulbright v. State, 41 S.W.3d 228, 235 (Tex. App.–Fort Worth 2001, pet. ref’d). A
constitutional error within the meaning of Rule 44.2(a) is an error that directly offends the United
States or Texas constitution, without regard to any applicable statute or rule. Tate v. State, 988
S.W.2d 887, 890 (Tex. App.–Austin 1999, pet. ref’d). Error in the trial court’s admonishments
regarding self-representation is a non-structural constitutional error subject to a harm analysis.
Easton v. State, No. 14-99-01145-CR, 2001 WL 1289945 at *8 (Tex. App.–Houston [14th Dist.]
Oct. 25, 2001, pet. ref’d) (not designated for publication). According to Rule 44.2(a), we must
reverse the trial court’s judgment unless we determine beyond a reasonable doubt that the alleged
error did not contribute to Appellant’s conviction or punishment. Tex. R. App. P. 44.2(a); Fulbright,
41 S.W.3d at 236 (citing Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)). Because
it is a reviewing court’s responsibility to decide whether the error had some adverse effect on the
proceedings, Appellant has no burden to show harm. Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim.
App. 2001). Therefore, we must determine beyond a reasonable doubt if Appellant’s ineffective
waiver and lack of counsel contributed to his conviction or punishment.
            Appellant admitted in opening arguments that he committed the offense. Caldwell identified
Appellant as the person who struck her in the face. Jackson testified that Appellant was in the office
shared by Caldwell and Jackson when the incident occurred. Both Caldwell and Jackson told Hanley
that Appellant assaulted Caldwell. In his statement taken by Whitehead, Appellant admitted striking
Caldwell. Finally, Otero testified that Appellant was depressed, but that he found no signs of
diminished capacity in Appellant. Even if Appellant had been properly admonished and decided not
to waive counsel, the record contains overwhelming evidence of Appellant’s guilt. Therefore, we
conclude that the trial court’s error in improperly admonishing Appellant did not, beyond a
reasonable doubt, contribute to his conviction.
            In the punishment phase of the trial, Appellant pleaded “untrue” to two prior felony
convictions in Texas. However, Merchant positively matched Appellant’s known fingerprints with
the fingerprints of two penitentiary packets. Appellant’s alleged prior felony convictions in Texas
were for attempted murder and murder with malice. Further, the State’s attorney mentioned that
Appellant committed another offense in Arkansas, assault with intent to commit murder. Even if
Appellant had been properly admonished and decided not to waive counsel, Appellant’s alleged prior
felony convictions and violent past would have been disclosed to the jury. Therefore, we conclude
that the trial court’s error in improperly admonishing Appellant did not, beyond a reasonable doubt,
contribute to his punishment. Accordingly, Appellant’s first issue is overruled.

Jury Charge
            In his second issue, Appellant contends that the jury charge failed to submit the issue of
whether Caldwell was a “public servant,” depriving him of his right to a finding of guilt beyond a
reasonable doubt on all elements of the offense. Thus, Appellant argues that he suffered egregious
harm. The State contends that Appellant failed to object to the jury charge. Further, the State argues
that even though the jury charge included an instruction that a mental health liason was a public
servant, it was still required to prove that Caldwell was a mental health liason. Therefore, the State
was not relieved of any burden of proof in this case.
            The purpose of a jury charge is to inform the jury of the relevant law and guide them in its
application to the case. Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). A trial court
is statutorily mandated to deliver to the jury a written charge distinctly setting forth the law
applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004). A judge has
no discretion to ignore statutory requirements. Edwards v. State, 10 S.W.3d 699, 702 (Tex.
App.–Houston [14th Dist.] 1999), pet. dism’d, 67 S.W.3d 228 (Tex. Crim. App. 2002) (per curiam)
(citing McGee v. State, 711 S.W.2d 257 (Tex. Crim. App. 1986)). 
            The elements of assault on a public servant are (1) a person, (2) intentionally, knowingly, or
recklessly, (3) causes bodily injury to a public servant, (4) who is known by the actor to be a public
servant, (5) while the public servant is lawfully discharging an official duty. See Tex. Pen. Code
Ann. § 22.01(a), (b)(1). The term “public servant” was defined in the jury charge as a person
elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of
government. Additionally, the jury charge included an instruction that “a Mental Health Liason is
a public servant.” Further, the jury charge stated that, in order to find Appellant guilty of assault on
a public servant, the jury must find, beyond a reasonable doubt, that
 
the defendant . . . intentionally, knowingly and recklessly cause[d] bodily injury to Kathy Caldwell by
striking the said Kathy Caldwell’s face and the said Kathy Caldwell was then and there a mental health
liason employed by the University of Texas Medical Branch assigned to the Texas Department of
Criminal Justice-Institutional Division, Eastham Unit, in the lawful discharge of her official duty, to
wit: interviewing inmates and the said defendant had been informed and knew Kathy Caldwell was a
mental health liason.
 
            Thus, according to the charge’s instructions, in order to find Appellant guilty of the offense,
the jury was required to find that Caldwell was a mental health liason, that she was performing her
official duties, and that Appellant knew Caldwell was a mental health liason. The instruction that
a mental health liason is a public servant is a correct statement of the law under the facts presented
and was not a question of fact for the jury. See Tex. Pen. Code Ann. § 1.07(41)(A) (Vernon 2003).
Consequently, we conclude that the jury charge correctly states the law applicable to the case.
Accordingly, Appellant’s second issue is overruled.

Evidentiary Sufficiency
            In his third issue, Appellant argues that the evidence is legally and factually insufficient to
support the conviction because there was no evidence that Caldwell was a “public servant.”
Standard of Review
            “Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction.” Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.–San Antonio 1999, no pet.) (citing Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781,
2786-88, 61 L. Ed.2d 560 (1979)). The standard of review is whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The evidence
is viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
LaCour, 8 S.W.3d at 671. 
            After a reviewing court has found that the evidence is legally sufficient to support the verdict,
the court may go forward with a review of the factual sufficiency of the evidence. Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing factual sufficiency, a court examines
all the evidence “without the prism of ‘in the light most favorable to the prosecution’ and sets aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.” Id. at 134. The court must inquire whether a neutral review of all the evidence, both
for and against the verdict, establishes that the proof of guilt is so manifestly weak as to undermine
faith in the jury’s resolution, or the proof of guilt, although sufficient if taken alone, is greatly offset
by conflicting proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).
            In a criminal conviction, sufficiency of the evidence is determined by the elements of the
crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). The correct charge “would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense
for which the defendant was tried.” Id.
Analysis
            The elements of assault on a public servant are (1) a person, (2) intentionally, knowingly, or
recklessly, (3) causes bodily injury to a public servant, (4) who is known by the actor to be a public
servant, (5) while the public servant is lawfully discharging an official duty. See Tex. Pen. Code
Ann. § 22.01(a), (b)(1). As discussed above, the record shows that Caldwell was a mental health
liason employed by UTMB assigned to the Eastham Unit, and that her official duty was interviewing
inmates. Jackson testified that she works for UTMB at the Eastham Unit and that she and Caldwell
work in the same office. Hanley testified that he found Caldwell in the psychiatric unit, and
Appellant admitted going to the “psych” unit to request a transfer. From this testimony, a jury could
have concluded that Caldwell was a public servant. Therefore, viewing the evidence in the light
most favorable to the jury’s verdict, we conclude that a rational trier of fact could have found the
elements of assault on a public servant beyond a reasonable doubt. 
            Having determined that the evidence is legally sufficient to support the verdict, we address
factual sufficiency. In conducting our review, we conclude that there is no contradictory evidence
in the record. Therefore, in reviewing the entire record, both for and against the jury’s verdict, we
do not find that proof of Appellant’s guilt is so manifestly weak as to undermine faith in the jury’s
resolution, or that the proof of guilt, although sufficient if taken alone, is greatly offset by conflicting
proof. Accordingly, Appellant’s third issue is overruled.

Proportionality of Sentence
            In his fourth issue, Appellant contends that his sixty-year sentence is grossly disproportionate
for the particular offense and is, therefore, cruel and unusual punishment under the United States and
Texas constitutions. The State disagrees and argues that a sentence falling within the range of
punishment for an offense set by statute does not violate prohibitions against cruel and unusual
punishment. Moreover, the State contends that Appellant failed to preserve this issue for review.
            If the accused made no objections to the trial court regarding the issue of cruel and unusual
punishment, he has waived that issue with respect to any alleged violation of his rights under the
Texas Constitution. Jacobs v. State, 80 S.W.3d 631, 632-33 (Tex. App.–Tyler 2002, no pet.) (citing
Tex. R. App. P. 33.1; Rhoades v. State, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996). Appellant
did not object to the sentence as cruel and unusual punishment and, therefore, has waived this issue.
Further, Appellant failed to analyze, argue, or provide authority to establish that his protection under
the Texas Constitution exceeds or differs from that provided to him by the federal constitution. See
Arnold v. State, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993); Chilman v. State, 22 S.W.3d 50, 54
(Tex. App.–Houston [14th Dist.] 2000, pet. ref’d). Thus, we will not address Appellant’s state
constitutional argument and, instead, will turn our attention to Appellant’s Eighth Amendment
argument. Arnold, 873 S.W.2d at 33; Chilman, 22 S.W.3d at 54. 
            A gross proportionality principle is applicable to sentences for years. Davis v. State, 119
S.W.3d 359, 363 (Tex. App.–Waco 2003, pet. ref’d). The legislature has the power to define crimes
and prescribe penalties. Jacobs, 80 S.W.3d at 633. Further, if the sentence falls within the limits
prescribed by a valid statute, the punishment is not excessive, cruel, or unusual. Id. (citing Harris
v. State, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); Jordan v. State, 495 S.W.2d 949, 952 (Tex.
Crim. App. 1973)). In determining whether a sentence is grossly disproportionate, we consider not
only the present offense but also an accused’s criminal history. Davis, 119 S.W.3d at 363.
            In this case, the evidence shows that Appellant struck Caldwell in the face, and was found
guilty of assault on a public servant. The punishment range for the offense committed is life or for
a period of not more than ninety-nine years or less than twenty-five years. Tex. Pen. Code Ann.
§ 12.42(d). The punishment assessed is within the range set forth by the legislature. Further, the
jury found both enhancement paragraphs for felony convictions in Texas to be true. Appellant’s
prior felony convictions were for attempted murder and murder with malice. Additionally, the State
pointed out that Appellant committed another offense in Arkansas, assault with intent to commit
murder. Because the sentence was within the range of punishment and evidence was presented
regarding Appellant’s previous violent felonies, the punishment is not prohibited as cruel, unusual,
or excessive per se. See Jacobs, 80 S.W.3d at 633. Moreover, based upon Appellant’s sentence and
prior criminal history, we conclude that Appellant’s sentence is not grossly disproportionate in
violation of the Eighth Amendment of the United States Constitution. See Davis, 119 S.W.3d at 363
(citing Harmelin v. Michigan, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)). Finally,
a comparative analysis with sentences imposed on others in Texas, as well as sentences imposed on
others for the same crime in other jurisdictions, as discussed in Solem v. Helm, 463 U.S. 277, 290-92, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983), is not required where we do not find the sentence
to be disproportionate. See id. at 364 (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992)). Accordingly, Appellant’s fourth issue is overruled.

Conclusion
            Having overruled Appellant’s first, second, third, and fourth issues, the judgment of the trial
court is affirmed.

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered June 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.










(PUBLISH)