Hubert Edward CASTRO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–94–00399–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 29, 1995.

court's ruling that appellant lacked standing to contest a search of transient military quarters where incriminating evidence was found; (4) the good faith of the officers who conducted the search; and (5) the admissibility of an order showing the authority to permit the search of the military quarters. For the reasons stated below, we reject appellant's contentions and affirm his conviction.

## I. SUMMARY OF FACTS

Castro was a soldier at Fort Sam Houston (U.S. Army facility) when he deserted the Army and joined two friends in an escapade that involved the murder of a car salesman. During his absence of leave from the Army, Castro and his two friends went to a local car dealership and arranged for a test drive of a Nissan Pathfinder. During the test drive, Castro killed the salesman with a single shot from a 9mm Glock handgun at a Park & Ride in Live Oak, Texas. The three absconded with the Pathfinder to Castro's home in Tennessee. Three weeks later, Castro and his accomplices were arrested at Randolph Air Force Base when they returned to Texas.

Castro was first prosecuted in United States District Court for transporting stolen property through interstate commerce. Then the State indicted Castro for capital murder. His trial for murder, however, resulted in a mistrial when the jury deadlocked. After a change of venue, Castro was tried again and convicted of capital murder. He was sentenced to life in prison. In his appeal, Castro raises five points of error.

John M. Economidy, Law Offices of John M. Economidy, San Antonio, for Appellant.

Steven C. Hilbig, Criminal District Attorney and Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before CHAPA, C.J., and RICKHOFF and STONE, JJ.

## OPINION

STONE, Justice.

This appeal arises from the conviction of Hubert Edward Castro for capital murder. A jury sentenced Castro to serve life in prison. In his appeal, Castro raises five points of error challenging (1) the legality of his statement taken by police; (2) the trial court's refusal to admit into evidence appellant's testimony from his first criminal trial, which ended in a mistrial; (3) the trial

## II. LEGALITY OF APPELLANT'S STATEMENT

Castro first argues that his statements to the police were illegally obtained because he made his statement without legal counsel and because he did not initiate contact with the police on the day he gave his statement.

**A. Statements of the Criminally–Accused**

Once an accused indicates that he desires the assistance of legal counsel, all

interrogation of the accused must cease and any statement thereafter must be suppressed unless he makes a voluntary and knowing waiver of his right to have counsel present. *Edwards v. Arizona*, 451 U.S. 477, 480, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *Sorenson v. State*, 709 S.W.2d 321, 322 (Tex. App.—Texarkana 1986, no pet.). This rule is not violated, however, when the accused himself initiates further communication with the police, and his statements are admissible in evidence if the totality of the circumstances shows that he made an intelligent and voluntary waiver of his right to counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405, 412 (1983); *Edwards*, 451 U.S. at 482, 101 S.Ct. at 1883; *Sorenson*, 709 S.W.2d at 322.

### B. Castro's Statement

Castro was arrested as he and his friends entered the transient quarters at Randolph Air Force Base. The transient quarters are part of the military installation and are used by the military to house military people who are in a "transient" status. The transient facility is made up of several buildings on the base and is operated similar to a civilian hotel.

The arrest was made by members of the Air Force's Special Office of Investigation. The Air Force's investigators were accompanied by members of the Live Oak Police Department who were investigating the murder of the Nissan car salesman. Upon his arrest, Castro was advised of his *Miranda* rights and then moved to the Air Force Office of Special Investigations on Randolph where the investigators completed paperwork relative to the arrest.

Soon after arriving at that office, Castro told one of the investigators that he wanted a lawyer, so the investigators stopped talking with Castro. Later that evening, Castro told Detective Hooper, one of the Live Oak police officers, that he wanted to make a statement, but Hooper advised him that he could not take a statement at that time because Castro had expressed his desire to speak with a lawyer. Detective Hooper also told Castro that he would contact the Bexar County District Attorney's office to let the office know that he wished to make a statement. That evening Castro was transferred to the custody of the Live Oak Police who presented him to the Magistrate who informed Castro of his *Miranda* rights.

The next morning, Detective Hooper was told by a representative of the Bexar County District Attorney's office that he could take Castro's statement if he still wanted to make one. Finding that Castro still desired to make a statement, Hooper went to the lock-up facility and after again warning him of his *Miranda* rights took Castro's statement. At trial, Castro filed a motion to suppress his written statement, State's Exhibit 94. The trial judge denied the motion and the State admitted the statement.

 At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and the weight of their testimony. *Banda v. State*, 890 S.W.2d 42, 51 (Tex.Crim.App.1994). On review, an appellate court does not disturb the findings of the trial court, but considers whether the trial court improperly applied the law to the facts. *Id.* at 52.

 The evidence here establishes that Castro waived his right to have counsel present when he made his statement. It was Castro, not the police, who initiated the "further communications" after he invoked his right to counsel. The record shows that Castro was advised of his *Miranda* rights four times prior to giving his statement. This constituted an intelligent and knowing relinquishment of his right to counsel. *Labarge v. State*, 681 S.W.2d 261, 263 (Tex. App.—San Antonio 1984, no pet.) Since Castro knowingly relinquished his right to counsel prior to making his statement, the trial judge did not err in allowing the State to submit Castro's statement. We overrule Castro's first point of error.

### III. EXCLUSION OF EVIDENCE

At his first trial, Castro testified and was cross-examined by the State. A mistrial was declared after the jury dead-locked. At the conclusion of his case-in-chief at his second trial, Castro's defense attorney advised the trial court that Castro invoked his privilege against self-incrimination and attempted to introduce Castro's testimony from his first trial. The State objected on the grounds

that the prior testimony was inadmissible hearsay. The trial judge sustained the objection and the evidence was excluded. In his second point of error, Castro contends that his prior testimony was improperly excluded.

■ Castro contends that his former testimony should have been admitted under the "former testimony" exception to the rule against hearsay. TEX.R.CRIM.EVID. 804. Under the former-testimony exception, a declarant's testimony from a prior proceeding can be admitted if the declarant was subject to cross-examination in the prior proceeding, and his testimony is now unavailable. TEX. R.CRIM.EVID. 804(b)(1). Castro argues that he was unavailable by virtue of exercising his Fifth Amendment right against self-incrimination.

### A. Unavailability

■ The Texas Rules of Criminal Evidence define five situations in which a declarant is considered "unavailable" as a witness. TEX.R.CRIM.EVID. 804(a). If a witness is unavailable as a witness, his testimony given as a witness at a prior proceeding may be admitted into evidence if the party against which it is offered had an opportunity to cross-examine the witness at the former proceeding. TEX.R.CRIM.EVID. 804(b)(1). The definition of "unavailability" includes the situation in which the declarant is "exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement." TEX.R.CRIM. EVID. 804(a)(1). Protection under the Fifth Amendment against self-incrimination is such a privilege. However, the rule also holds that "a declarant is not unavailable as a witness if his exemption ... is due to the procurement ... of the proponent of his statement for the purpose of preventing the witness from attending or testifying."

■ Here, the defendant has created his own unavailability by invoking his Fifth Amendment protection against self-incrimination. The question then before the Court is whether a defendant who has procured his own unavailability by invoking his protection against self-incrimination is "unavailable" as a witness for the purposes of Rule 804(b)(1).

Although the Court has been unable to find a Texas case addressing this issue, we are persuaded by the Fifth Circuit's decision in *United States v. Kimball*, 15 F.3d 54 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994). In *Kimball*, the defendant attempted to introduce his testimony from his first trial at his second trial while invoking his Fifth Amendment right against self-incrimination. The defendant argued that he was rendered unavailable when he invoked his Fifth Amendment right, so the trial judge erred in excluding his former testimony. The Fifth Circuit rejected that argument because "[t]he sponsor of a declarant's former testimony may not create the condition of unavailability and then benefit therefrom." *Kimball*, 15 F.3d at 55–56. Otherwise, the criminally-accused is permitted to set out all the facts which fall in his favor without laying himself open to cross-examination of those facts. *Id.* at 56.

### B. Castro's Unavailability

■ Like the defendant in *Kimball*, Castro procured his own unavailability by invoking his protection against self-incrimination. While the trial judge was required to honor Castro's right not to make incriminating statements against himself, she was not required to permit Castro to offer self-serving evidence to the jury without facing cross-examination by the State. We agree with the Fifth Circuit that "[a] defendant seeking to testify and make exculpatory statements must face cross-examination." *Kimball*, 15 F.3d at 56. Castro was not unavailable for the purposes of Rule 804(b). Castro's second point of error is overruled.

### IV. STANDING TO CONTEST THE SEARCH

At trial, Castro moved to suppress evidence seized during the search of two rooms of the Randolph Air Force Base transient quarters (the "Randolph rooms") where Castro and his accomplices were staying prior to his arrest. The search was conducted by an investigator from the Air Force Office of Special Investigations, accompanied by a member of the Live Oak Police Department.

During the search, the special investigator seized a pair of short pants and some notes believed to belong to Castro, and surrendered the evidence to the Live Oak police department. In a motion to suppress, Castro sought to exclude the evidence seized during the search, but the trial judge denied his motion for lack of standing. In his third point of error, Castro complains that the trial judge erred in holding he lacked standing to contest the search of *his transient military quarters*.

### A. Standing

■■■■ To be entitled to object to the admissibility of evidence obtained from a search, a defendant must have standing. *Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *Alderman v. United States,* 394 U.S. 165, 169, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1968); *Fuller v. State,* 829 S.W.2d 191, 201–02 (Tex.Crim.App. 1992). To have standing, the defendant must show that he was the victim of the search by demonstrating he had a reasonable expectation of privacy which was invaded by the search and that evidence obtained by the search was offered against him. *See Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425. *See also Alderman,* 394 U.S. at 171, 89 S.Ct. at 966. The burden of proof lies with the defendant. *Rakas,* 439 U.S. at 131, n. 1, 99 S.Ct. at 424, n. 1.

### B. Castro's Expectation of Privacy

■■■■ A defendant's standing depends upon whether he had a subjective expectation of privacy in the place searched that society will recognize as reasonable. *Minnesota v. Olson,* 495 U.S. 91, 94, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). Castro argues that his expectation of privacy should be viewed from the perspective of the military society in which he existed at the time of the search and where the search was conducted. He reasons that as a member of the United States Army, he had a right to stay in the

military transient quarters and as such, had a reasonable expectation of privacy which gave him standing to contest the admission of evidence seized from the search of the Randolph rooms. However, a mere right to be somewhere does not grant a person standing to contest a search.

■■■■ Castro analogizes to case law giving standing to overnight guests at hotels to contest unreasonable searches of their rooms; however, his argument is unpersuasive because it fails to consider his status as an "unregistered" person in the Randolph rooms.[1] Castro relies on *Stoner v. State of California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), and *Moberg v. State,* 810 S.W.2d 190 (Tex.Crim.App.1991), for the proposition that a guest of a hotel has a reasonable expectation of privacy which provides standing to contest the search of the Randolph rooms. But *Stoner* and *Moberg* can be distinguished from Castro's circumstances. In those cases, the defendant was a "registered" guest at the hotel where he was staying and the search was conducted. As a registered guest, the defendant had a reasonable expectation of privacy that protected him from unreasonable search and seizure when the manager of the hotel gave police permission to search the defendant's room. This expectation of privacy gave the defendant standing to contest the search. Here, Castro was not a registered guest. Instead, the Randolph rooms were registered in the name of one of Castro's accomplices. As an unregistered person sharing hotel rooms with a registered guest who paid for those rooms, Castro did not have the same expectation of privacy as the registered guest in *Stoner* or *Moberg.* Contrary to Castro's argument, he was not in the Randolph rooms "by virtue of his status in the U.S. Army," but rather the rooms were available to his accomplice as a member of the armed forces. This alone does not support a reasonable expectation of privacy. This finding is not unlike that of the Court of Criminal Appeals in *Clapp v. State.* 639 S.W.2d 949 (Tex.Crim. App.1982). In that case, the Court found the

---

1. Castro's argument also fails to consider his unique position as a soldier in deserter status. If indeed Castro was a member of a specialized society as he argues, the Court strains to understand how a military member in deserter status could have a reasonable expectation of privacy under such circumstances.

defendant, a non-registered guest in a hotel, did not have standing to contest the search of the registered guest's hotel room.

■ The Military Rules of Evidence upon which Castro relies make it clear that a military commander has broad authority to authorize the search of military property. *See* MIL.R.EVID. 314–315. Rule 315 allows a military commander to authorize a search of military property upon probable cause. The "permission to search" can be either oral or written. Rule 314 gives commanders authority to search government property *without probable* cause *unless* "the person to whom the property is issued or assigned has a reasonable expectation of privacy therein at the time of the search."

■ The Randolph rooms were searched by the special investigator on the verbal authorization of the Randolph Vice–Commander. The Vice–Commander gave his permission after a member of the Live Oak police department established probable cause for the search. Since Castro was not a person to whom the Randolph rooms were issued or assigned, Castro would be without standing to contest the search of the Randolph rooms even if the special investigator had acted without probable cause. Although as a member of the armed forces Castro never relinquished protection from unreasonable search and seizure, the Military Rules of Evidence suggest a limited expectation of privacy under the circumstances of the search, and not the heightened standard Castro implies is required by virtue of his status as a military person on a military installation.[2] The rules protect against unreasonable search and seizure, and here the search of the Randolph rooms was not unreasonable. The Court finds that Castro has not met his burden of demonstrating a reasonable expectation of privacy. Because Castro failed to meet the

first requirement for standing, the Court overrules his third point of error.

## V. GOOD FAITH SEARCH

■ In his fourth point of error, Castro complains that the search of the Randolph rooms and the seizure of the evidence was illegal and not done in good faith. Rule 103 requires that, to maintain error based on a ruling admitting or excluding evidence, the objecting party must assert the specific ground of objection, if the specific ground is not apparent from the context. TEX.R.CRIM. EVID. 103. The ground upon which Castro appeals was not specifically asserted at trial. At trial, defense counsel objected to the introduction of the short pants by the State because they had not been linked to Castro.[3]

### A. Preservation of Error

■ "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Since Castro appeals on a basis different than that used in his trial objection, his fourth point of error was not preserved for appeal.

### B. Good Faith

Having concluded that Castro's point of error was not preserved by trial objection, the Court need not address the merits of his arguments concerning the good faith of the search of the Randolph rooms, but the Court notes that there is no serious contest before it regarding the good faith of the investigators involved in the search of the Randolph rooms. The testimony during the pre-trial hearing supports the trial judge's belief that the special investigators acted in good faith in searching the Randolph rooms. Probable cause had been established through informa-

---

**2.** *See also United States v. McCarthy*, 38 M.J. 398, 403 (C.M.A.1993) (concluding that need for discipline and readiness in military society limits expectation of privacy in two-person barracks room assigned to individual occupants); *United States v. Thatcher*, 28 M.J. 20, 22 (C.M.A.1989) (noting that Fourth Amendment protects service members from unreasonable searches and seizures, but what is unreasonable depends upon circumstances of particular intrusion and stating that what is unreasonable in civilian context may

be necessary in military context); *United States v. Middleton*, 10 M.J. 123, 127 (C.M.A.1981) (finding foreseeability that reasonable expectation of privacy within military society differs from those in civilian society).

**3.** Castro waived any objection to seizure of the "notes" taken from the Randolph room because *defense counsel* introduced them into evidence.

tion provided by the Live Oak police and permission to search was obtained from the appropriate military official. The actions of the investigators were reasonable and the search was not illegal. Point of Error No. 4 is overruled.

## VI. ADMISSIBILITY OF MILITARY ORDER

Finally, Castro complains that the trial judge improperly admitted into evidence a military order appointing Colonel William Phillips as commander at Randolph Air Force Base. This order served as documentary proof that Colonel Phillips was authorized in his capacity as acting commander to give permission to search the Randolph rooms. During the pre-trial hearing, Castro's defense attorney objected to the introduction of the document on the grounds that it was hearsay and that it was not properly certified as a business record. The State conceded that it was not properly certified and the trial judge admitted the document as State's Exhibit 2. The next day, the State attempted to prove-up certification with another copy of the document (State's Exhibit 7) and with testimony from a military orders clerk from Randolph Air Force Base. Defense counsel objected to introduction of Exhibit 7 on the grounds that the clerk was not competent to testify as to the authenticity of the document, that the document had not been proven up as a business record, it was not a public document excepted under Rule 803(4), and it was not certified in compliance with Air Force procedures. Upon hearing testimony from the orders clerk, the trial judge overruled the objection.

### A. Hearsay

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered into evidence to prove the truth of the matter asserted." TEX.R.CRIM. EVID.801(d). Statements falling within this definition, and not exempted by one of the hearsay exemptions, are excluded from evidence.

### B. Admissibility of the Military Order

■ To be considered hearsay an out-of-court statement must be offered to prove the truth of the matter asserted. Here, the military order asserted that Colonel Phillips was temporarily assigned as Commander at Randolph. It was offered to prove that the special agents acted in good faith in searching the Randolph rooms, and not that Colonel Phillips was assigned as commander. Consequently, the document was not hearsay and was admissible under Rule 402 as relevant evidence. Since the document was properly admitted, the trial judge did not err. Castro's fifth point of error is overruled.

Having overruled each of Castro's points of error, we affirm Castro's conviction.