ACCEPTED
14-15-00220-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/14/2015 10:05:19 AM
CHRISTOPHER PRINE
CLERK

**No. 14-15-00220-CR**

In the
**Court of Appeals**
For the
**Fourteenth District of Texas**
At Houston

——————◆——————

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

12/14/2015 10:05:19 AM

CHRISTOPHER A. PRINE
Clerk

**No. 1420283**
In the 230th District Court
Of Harris County, Texas

——————◆——————

**VINCENT WILLIAMS**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

——————◆——————

**STATE'S APPELLATE BRIEF**

——————◆——————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**LISA CALLIGAN**
Assistant District Attorney
Harris County, Texas

**JESSICA CAIRD**
Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.755.5826
Fax Number: 713.755.5809
State Bar Number: 24000608
caird_jessica@dao.hctx.net

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State does not request oral argument because the issues raised by appellant are well settled and argument would not benefit the court.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Jessica Caird** — Assistant District Attorney on appeal

**Kelsey Downing  & Lisa Calligan** — Assistant District Attorneys at trial

*Appellant or criminal defendant:*

**Vincent Williams**

*Counsel for Appellant:*

**Sarah V. Wood** — Counsel on appeal

**Craig Bundick** — Counsel at trial

*Trial Judge:*

**Honorable Brad Hart** — Judge Presiding

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT .................................................i

IDENTIFICATION OF THE PARTIES .......................................................i

TABLE OF CONTENTS....................................................................... ii

INDEX OF AUTHORITIES................................................................... iii

STATEMENT OF THE CASE..................................................................1

STATEMENT OF FACTS .....................................................................2

    *I. Evidence presented during the motion to suppress hearing*..........................2

    *II. Evidence presented during trial* ...............................................7

SUMMARY OF THE ARGUMENT ....................................................11

    *I.  The standard of review and applicable law on motions to suppress* ...........12

    *II. As a trespasser, appellant lacked a legitimate expectation of privacy in the house* ................................................................15

    *III.  Ms. Johnson had actual authority to consent to the search*....................19

    *IV.  Ms. Johnson had at least apparent authority to consent to the search*....20

    *V.  Conclusion* ................................................................23

PRAYER .........................................................................24

CERTIFICATE OF SERVICE .....................................................25

CERTIFICATE OF COMPLIANCE ................................................26

# INDEX OF AUTHORITIES

**CASES**

*Black v. State*,
776 S.W.2d 700 (Tex. App.—Dallas 1989, pet. ref'd)........................................16

*Brick v. State*,
738 S.W.2d 676 (Tex. Crim. App. 1987)............................................................23

*Carmouche v. State*,
10 S.W.3d 323 (Tex. Crim. App. 2000)..............................................................12

*Castro v. State*,
227 S.W.3d 737 (Tex. Crim. App. 2007)............................................................13

*Castro v. State*,
914 S.W.2d 159 (Tex. App.—San Antonio 1995, pet. ref'd) ....................... 15, 18

*Davis v. State*,
119 S.W.3d 359 (Tex. App.—Waco 2003, pet. ref'd) ........................... 15, 16, 19

*Delosreyes v. State*,
853 S.W.2d 684 (Tex. App. – Houston
[1st Dist.] 1993, pet. ref'd)...............................................................................13

*Douglas v. State*,
695 S.W.2d 817 (Tex. App.—Waco 1985, pet. ref'd)........................... 15, 16, 19

*Ex parte Moore*,
395 S.W.3d 152 (Tex. Crim. App. 2013).................................................... 16, 17

*Ford v. State*,
158 S.W.3d 488 (Tex. Crim. App. 2005)............................................................13

*Ford v. State*,
305 S.W.3d 530 (Tex. Crim. App. 2009)............................................................21

*Freeman v. State*,
723 S.W.2d 727 (Tex. Crim. App. 1986)............................................................13

*Guzman v. State*,
955 S.W.2d 85 (Tex. Crim. App. 1997)..............................................................12

*Hubert v. State*,
312 S.W.3d 554 (Tex. Crim. App. 2010)...................................... 14, 19, 20, 21

iii

*Illinois v. Rodriguez*,
    497 U.S. 177 (1990) ................................................................... 14, 21, 23

*Jones v. State*,
    944 S.W.2d 642 (Tex. Crim. App. 1996)..............................................13

*Kothe v. State*,
    152 S.W.3d 54 (Tex. Crim. App. 2004)......................................... 15, 17

*Lewis v. State*,
    598 S.W.2d 280 (Tex. Crim. App. 1980)..............................................16

*Limon v. State*,
    340 S.W.3d 753 (Tex. Crim. App. 2011)..............................................23

*McCuller v. State*,
    999 S.W.2d 801 (Tex. App.—Tyler 1999, pet. ref'd)...........................16

*Minnesota v. Olson*,
    495 U.S. 91 (1990) ............................................................................16

*Ohio v. Robinette*,
    519 U.S. 33 (1996) ............................................................................14

*Perez v. State*,
    818 S.W.2d 512 (Tex. App. – Houston
    [1st Dist.] 1991, no pet.).....................................................................13

*Rachal v. State*,
    917 S.W.2d 799 (Tex. Crim. App. 1996)................................................7

*Rakas v. Illinois*,
    439 U.S. 128 (1978) ..........................................................................16

*Salazar v. State*,
    284 S.W.3d 874 (Tex. Crim. App. 2009)..............................................18

*Smith v. Maryland*,
    442 U.S. 735 (1979) ..........................................................................17

*State v. Beckman*,
    No. 04-12-00406-CR,
    2013 WL 2445039 (Tex. App.—San Antonio Jun. 5, 2013, no pet.)
    (mem. op., not designated for publication) ........................................16

*State v. Klima*,
    934 S.W.2d 109 (Tex. Crim. App. 1996)..............................................15

*State v. Ross*,
32 S.W.3d 853 (Tex. Crim. App. 2000)...............................................................13

*Swain v. State*,
181 S.W.3d 359 (Tex. Crim. App. 2005)...................................................... 12, 13

*Terry v. Ohio*,
392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ...................................... 13, 21

*United States v. Matlock*,
415 U.S. 164 (1974) ............................................................................................14

*Villarreal v. State*,
935 S.W.2d 134 (Tex. Crim. App. 1996).............................................................17

*Welch v. State*,
No. 03-99-00388-CR,
2000 WL 45546 (Tex. App.—Austin Jan. 21, 2000, no pet.)
(mem. op., not designated for publication) .........................................................16

*Woods v. State*,
956 S.W.2d 33 (Tex. Crim. App. 1997)...............................................................13

**STATUTES**

TEX. PENAL CODE ANN. §12.42(d)
(West Supp. 2013)..................................................................................................1

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A)................................................................................ i
TEX. R. APP. P. 39.1............................................................................................... i
TEX. R. APP. P. 9.4(g)............................................................................................ i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State charged appellant by indictment with the felony offense of possession of a controlled substance, cocaine, weighing more than one grams and less than four grams.[1] The trial court conducted a hearing on appellant's motion to suppress on September 29, 2014, and denied the motion at the conclusion of the hearing.[2] Appellant pled not guilty and proceeded to jury trial on February 23, 2015, but the jury found him guilty the following day.[3] He pled "not true" to two enhancement paragraphs that set the minimum sentence at 25 years, but the jury found both true.[4] The jury assessed sentence to the minimum 25-years confinement in the Texas Department of Criminal Justice, Correctional Institutions Division.[5] He did not file a motion for new trial, but he did file timely written notice of appeal.[6]

————————◆————————

---

[1] (CR-20);
The appellate record consists of the following:
    CR-Clerk's Record;
    RRI-RRX-Court Reporter's Record prepared by Trish Matthews.
[2] (CR-67-71; RRIV-67).
[3] (CR-171; RRVII-10).
[4] (CR-158-167; RRVIII-6-7; RRIX-11-12); TEX. PENAL CODE ANN. §12.42(d) (West Supp. 2012).
[5] (CR-167, 171; RRIX-11-12).
[6] (CR-175).

## STATEMENT OF FACTS

### I. Evidence presented during the motion to suppress hearing

Officer Robinson received notification to go to 4930 Hull Street to meet with a reportee about possible trespassers on the property.[7] Upon his arrival, he met with Geraldine Johnson, he saw a couple of cars parked in the driveway, and Ms. Johnson showed him a couple of documents.[8] First she showed him a handwritten letter from her brother Eugene who was currently incarcerated in the Harris County Jail, wherein he complained that someone had moved into his house who was not supposed to be there.[9] Eugene Johnson wanted the people removed.[10]

Ms. Johnson also showed Officer Robinson a will that showed she and her brother inherited all the property of Eugene Johnson Sr.[11] Officer Robinson verified the will by checking the Harris County Appraisal District website which listed the property as belonging to the Johnson Trust.[12] After determining based on the documentary evidence and the Harris County records that Ms. Johnson and her

---

[7] (RRIV-7, 9).
[8] (RRIV-9, 10, 11).
[9] (RRIV-9-10, 35; State's Exhibit No. 1).
[10] (RRIV-10).
[11] (RRIV-10, 11; State's Exhibit No. 2).
[12] (RRIV-10).

brother appeared to be the lawful owners of the property, Officer Robinson had Ms. Johnson complete a trespass affidavit.[13]

The letter from Eugene Johnson, Jr. explained that someone named Vincent came to tell Mr. Johnson that a Roland had changed the locks and "they are staying there."[14] Mr. Johnson stated that he told Vincent they never should have moved into his house or changed the locks without first getting his permission.[15] The letter requested that they make "everyone get out" and he had no idea how Vincent and Roland got into his house in the first place.[16]

Officer Robinson and his sergeant approached the house and knocked repeatedly on the door and some windows for about ten minutes while they attempted to get the people inside to answer the door.[17] Finally, appellant came to the door, unlocked it, and Officer Robinson introduced himself.[18] He explained that he was there to make sure no one was on the property that was not supposed to be there.[19] Appellant made no mention of any sort of a lease agreement.[20]

---

[13] (RRIV-10, 14).
[14] (RRIV-25; State's Exhibit No. 1).
[15] (State's Exhibit No. 1).
[16] (RRIV-25; State's Exhibit No. 1).
[17] (RRIV-14-15).
[18] (RRIV-14-15).
[19] (RRIV-15).
[20] (RRIV-29).

3

When appellant opened the door, Officer Robinson immediately smelled a heavy odor of marihuana emitting from inside the house and from appellant's person.[21] Appellant stepped outside, and Officer Robinson detained him in handcuffs in order to identify him and to "keep him away from anything in the house that he could get access to" based on the smell of marihuana.[22]

It was as Officer Robinson handcuffed appellant that he tried to step back inside to get his girlfriend.[23] Appellant never claimed he belonged in the house, that he was a renter, or an owner.[24] Officer Robinson took appellant to his patrol car.[25] The officer returned to the open door and called out appellant's girlfriend's name loudly, but she did not respond.[26] When she did not answer him, Officer Robinson asked Ms. Johnson for her consent to enter the house to remove appellant's girlfriend.[27] She agreed.[28]

Officer Robinson and his sergeant entered the home and found appellant's girlfriend asleep in a bedroom.[29] In the room with her, Officer Robinson observed

---

[21] (RRIV-15).
[22] (RRIV-15).
[23] (RRIV-15, 16).
[24] (RRIV-16).
[25] (RRIV-16).
[26] (RRIV-16).
[27] (RRIV-16-17).
[28] (RRIV-17).
[29] (RRIV-17).

4

in plain view a pistol on the shelved headboard of the bed where she slept.[30]  Also in the room, he observed marihuana and cocaine in plain view on top of the dresser.[31]  Next to the cocaine sat appellant's wallet with his driver's license, as well as his watch.[32]  The officers detained her to keep her away from the gun, and they brought her outside.[33]

Nothing presented during the encounter with Ms. Johnson, appellant, or the girlfriend lead Officer Robinson to believe that a lease agreement existed, which would have given appellant lawful access to the home.[34]  Rather, the officer's observations corresponded with the information provided in the letter regarding illegal activities that occurred at the home and appellant's unauthorized use of the home.[35]

Appellant presented his cousin Roland Gates and his own testimony in which he claimed they had reached an informal agreement with Eugene Johnson, Jr. that they could live in the house if they sporadically put an unspecified amount of money into Johnson's jail account.[36]  Both admitted they had no formal written lease, and that there was no set period of time or amount they needed to pay for

---

[30] (RRIV-17).
[31] (RRIV-18).
[32] (RRIV-18).
[33] (RRIV-17).
[34] (RRIV-18, 19).
[35] (RRIV-19).
[36] (RRIV-33, 34, 35, 36, 38, 39, 45, 46, 50, 51, 52, 56, 57, 59, 60).

permission to reside in the Johnson home.[37]   Interestingly, Roland Gates supposedly drove past the house as police arrested appellant, but he never stopped to tell them about a supposed lease.[38]   Rather, he claimed he called a few minutes later some unknown officer to tell them.[39]   Appellant and Gates admitted to changing the locks without express permission because they wanted to control access to the house and bar the person Mr. Johnson had requested to look after the house from entering it.[40]

In argument, appellant conceded that Ms. Johnson owned the home and that the investigating officer understood based on the information he received that no lease agreement existed.[41]   He conceded the officer had no reason to believe that appellant had a lawful right to be in the home.[42]   But nonetheless, appellate equated the situation to a formal rental agreement in which the owner may not consent for the tenant.[43]   He argued the police contact amounted to an impermissible eviction based on the unknown, undisclosed rental agreement, and therefore the search was conducted without valid consent.[44]

---

[37] *Id*.
[38] (RRIV-45).
[39] (RRIV-45).
[40] (RRIV-41, 53).
[41] (RRIV-62).
[42] (RRIV-62, 65-66).
[43] (RRIV-62-64).
[44] (RRIV-62-65).

The State, however, addressed Officer Robinson's reasonable belief in Ms. Johnson's apparent authority to consent to the search based on the evidence she was a part owner, and the evidence from her and her brother that the two people in the home were trespassers with no lawful right to be on the premises.[45] The trial court agreed, found the officer's investigation reasonable as there was no place he could have found contradictory evidence of a lease, he made the effort to search the County records for proof of the Johnsons' claim, and from all the evidence the officer formed a reasonable belief that appellant and his girlfriend were trespassers.[46] The officer lawfully entered the home with the valid consent of the only person with clear authority to authorize a search, and he found the drugs in plain view.[47] The trial court denied the motion.[48]

## II. Evidence presented during trial

Appellant sought and received permission to relitigate the suppression matter before the jury.[49] Appellant then argued in opening that he had leased the

---

[45] (RRIV-66-67).
[46] (RRIV-68-70).
[47] (RRIV-70).
[48] (RRIV-70).
[49] (RRVI-129); *see also Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) (permitting consideration of evidence presented during trial on a search issue when the parties consensually relitigated the issue during trial).

home informally from Mr. Johnson, and the State also referenced the officer's apparent authority to search in opening statement.[50]

The testimony from Ms. Johnson similarly described the letter she received from her incarcerated brother about people being in the home without permission and selling drugs out of the house.[51] She mentioned that the letter was mailed to her church with her son and daughter's names on it.[52] She drove by the house and saw an unfamiliar car parked in the driveway, the house had electricity which surprised her, and she saw an unfamiliar dog in the yard.[53] The letter told her the locks had been changed, and no one was supposed to be living in the home.[54]

Ms. Johnson went to police to report the crime, and she showed proof that the home belonged partly to her based on the will.[55] Based on everything she knew, the man and woman in the house had no permission or right to be in it, and she consented to police entering to remove them.[56] She had no knowledge of her brother renting out the house, and he would not have been permitted to do so without her permission because she was also the executor of her father's will.[57]

---

[50] (RRVII-11, 12-13).
[51] (RRVII-15, 16).
[52] (RRVII-16).
[53] (RRVII-16, 18, 19, 20).
[54] (RRVII-19-20).
[55] (RRVII-21-22, 23, 24).
[56] (RRVII-26-28).
[57] (RRVII-23, 29-30).

Moreover, the letter said nothing about the people in the house being expected to pay rent.[58] She found no receipts or evidence to indicate that they had been paying rent.[59]

Officer Robinson, quite tired after having worked all night before he testified, testified the home had belonged to Ms. Webster, Ms. Johnson's daughter.[60] He recalled, however, that Eugene Johnson, Sr. left the home to his family in trust and that the house was listed as belonging to the Johnson Trust.[61] He reviewed the handwritten letter she provided, along with the will, and from them he determined it was a criminal not a civil matter.[62]

The officer knocked on the door for about ten minutes before appellant finally answered the door.[63] He noticed the strong smell of marihuana, and appellant appeared reluctant to clear the doorway, so the officer asked him to step outside so he could see his hands and be certain he did not have a weapon.[64] Appellant told the officer he wanted to get his girlfriend, and he tried to step back

---

[58] (RRVII-31).
[59] (RRVII-34-35).
[60] (RRVII-36, 37, 38, 39).
[61] (RRVII-39).
[62] (RRVII-38, 39, 40).
[63] (RRVII-40).
[64] (RRVII-43-44).

9

inside, but fearing that he might get a weapon Officer Robinson handcuffed him and put him into the patrol car.[65]

Officer Robinson returned to the open doorway and called roughly four times the girlfriend's name, but after he got no response he asked the homeowner's permission to go and get her out of the house.[66] Ms. Johnson gave him consent, and he and his sergeant went into the living room and immediately to the bedroom where appellant told them she would be.[67] They found her asleep in a bed with a large headboard made of shelves, and on the headboard the officer saw a pistol.[68] He also observed in plain sight narcotics on a dresser.[69] Once outside, appellant asked Officer Robinson to retrieve his cell phone and wallet, and the officer found the items on the same dresser with the cocaine.[70]

Appellant never mentioned anything about renting the home, although he initially claimed Eugene Johnson, Jr. was his uncle, but he then amended the claim to say that Johnson was merely a friend.[71] Appellant made neither claim until after the officer entered with Ms. Johnson's permission to remove the girlfriend which

---

[65] (RRVII-44).
[66] (RRVII-45).
[67] (RRVII-46).
[68] (RRVII-46).
[69] (RRVII-46, 48).
[70] (RRVII-48, 50, 51).
[71] (RRVII-68, 69).

was when he first saw the drugs.[72] He considered the consent of the homeowner necessary, not that of a mere trespasser to the property.[73]

Police ultimately recovered 3.76 ounces of marihuana, some packaged in individual packs, and 1.24 grams of cocaine.[74] They also recovered the gun.[75]

Appellant rested behind the State and proffered no evidence before the jury that he had a valid, lawful right to be in the home.[76] And although the trial court included an Article 38.23 instruction, the jury found appellant guilty of possessing the cocaine.[77]

———————◆———————

## SUMMARY OF THE ARGUMENT

Appellant failed in his burden to show that he had standing to contest the search. The trial court reasonably concluded from the evidence that appellant had no reasonable expectation of privacy to a house in which he was a mere trespasser without permission to enter or inhabit given by the homeowners. Moreover, Ms. Johnson as the lawful part owner had both actual and apparent authority to give consent for police to search the home for trespassers.

---

[72] (RRVII-45, 70, 77).
[73] (RRVII-78).
[74] (RRVII-80-81, 92, 93; State's Exhibit No. 8).
[75] (RRVII-109-110).
[76] (RRVII-115).
[77] (CR-150, 156).

11

## REPLY TO APPELLANT'S SOLE POINT OF ERROR

Appellant's sole point of error contends that the trial court erred by overruling his motion to suppress the search of the Johnson's house. Yet, the record supported the trial court's conclusion that appellant had no reasonable expectation of privacy at the home to which he was a mere trespasser, and for which he had no permission to enter or inhabit provided by the home's owners. The officers also had consent from the person with actual and apparent authority to permit them entry into the home to remove trespassers. The trial court properly overruled appellant's motion.

## I. *The standard of review and applicable law on motions to suppress*

The standard for reviewing a trial court's ruling on a motion to suppress evidence is bifurcated.[78] First, the appellate court gives "almost total deference to the trial court's determination of historical facts" reviewing them for an abuse of discretion.[79] Then, the appellate court utilizes a *de novo* standard of review to consider the court's application of the law to the facts.[80]

The trial court is the sole judge of the credibility of the witnesses, and absent a showing of an abuse of discretion, the trial court's findings will not be

---

[78] *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997).

[79] *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (*citing Guzman*, 955 S.W.2d at 88-89); *See also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).

[80] *Id*.

disturbed.[81]  The Court of Criminal Appeals held, "if the record supports the trial court's findings, [the reviewing court] will not disturb those findings.  [The Court] only consider[s] whether the trial court properly applied the law to the facts."[82] The appellate court should view the evidence in the light most favorable to the trial court's ruling, and it should "sustain the trial judge's decision if it is correct on any theory of law applicable to the case."[83]

A police officer may detain a person for investigative purposes if the officer has a reasonable suspicion to believe the individual is violating the law.[84] "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity."[85]  A determination of reasonable suspicion does not consider the subjective intent of the officer making the detention, but reviews only whether there was an objective basis for it.[86]

---

[81] *Delosreyes v. State*, 853 S.W.2d 684, 686 (Tex. App. – Houston [1st Dist.] 1993, pet. ref'd) (*citing Freeman v.* State, 723 S.W.2d 727, 729 (Tex. Crim. App. 1986); *Perez v. State*, 818 S.W.2d 512 (Tex. App. – Houston [1st Dist.] 1991, no pet.)).

[82] *Jones v. State*, 944 S.W.2d 642, 649 (Tex. Crim. App. 1996).

[83] *Swain*, 181 S.W.3d at 365 (*citing State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)).

[84] *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Woods v. State,* 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (*citing Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

[85] *Castro v. State,* 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).

[86] *Ford,* 158 S.W.3d at 492.

Consent is a well-settled exception to the warrant requirement, and determination of the reasonableness of the officer's reliance on consent is determined based on the totality of circumstances.[87] A third party may consent to a search when he or she has actual or apparent authority over the place searched.[88]

A person has actual authority when she has authority over the premises or property.[89] This is not a matter of property law, but instead whether it is reasonable to recognize the person's right to permit inspection of the area searched.[90]

Apparent authority exists when the officer reasonably believes the third party purporting to give consent has actual authority over the place to be searched.[91] The conclusion might nevertheless be erroneous, but that does not invalidate the consent when reliance upon it was reasonable.[92]

The voluntariness of consent given by a third party for a search is a mixed question of fact and law reviewed *de novo*.[93] Without express findings by the trial court, a reviewing court considers the evidence in the light most favorable to the

---

[87] *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010).

[88] *See id.* at 560-61 (addressing actual and apparent authority of a third party to consent to a search) (citing *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990)).

[89] *Id.* at 560 (citations omitted).

[90] *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)).

[91] *Id.* at 561 (citing *Rodriquez*, 497 U.S. at 181).

[92] *Id.*

[93] *Id.* at 559.

trial court's ruling and assumes it resolved any fact issues and credibility determinations in accord with its ultimate ruling.[94] The State has the burden to show consent by a preponderance of the evidence that the officer's actions were reasonable.[95]

## II. As a trespasser, appellant lacked a legitimate expectation of privacy in the house

The State may raise the issue of standing for the first time on appeal.[96] Lower courts of appeals have concluded that a trespasser lacks a "reasonable expectation of privacy" to the premises and cannot complain of warrantless entry to the property.[97] To contest a search, the defendant must have some possessory or

---

[94] *Id*. (citations omitted).

[95] *Id*. at 561-62.

[96] *State v. Klima*, 934 S.W.2d 109, 111-12 (Tex. Crim. App. 1996); *see also Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004) (holding the State may raise standing for the first time on appeal, the appellate court may consider standing on its own as part of a Fourth Amendment claim, or it may conclude the State forfeited the argument, but finding the defendant had standing but the detention reasonable under the circumstances).

[97] *Castro v. State*, 914 S.W.2d 159, 164-65 (Tex. App.—San Antonio 1995, pet. ref'd) (finding no expectation of privacy to the military transient quarters because "a mere right to be somewhere does not grant a person standing to contest a search" when he was in someone else's room because as with an unregistered guest he had no reasonable expectation of privacy in the room); *Davis v. State*, 119 S.W.3d 359, 367 (Tex. App.—Waco 2003, pet. ref'd) (holding that the evidence supported the conclusion that the defendant had no possessory or ownership rights on the home and therefore no right to exclude others from the property, and therefore could not contest the governmental intrusion onto the property); *Douglas v. State*, 695 S.W.2d 817, 820 (Tex. App.—Waco 1985, pet. ref'd) ("Appellant cannot complain of Judie's warrantless entry of the premises or his warrantless search and seizure of the stolen property because the evidence showed that Appellant was a trespasser on the premises

property interest in the place searched.[98]  Absent a legitimate right to be present on the property, appellant had no reasonable expectation of privacy because he could not lawfully bar others from entry into the home.[99]

Appellant's status as a trespasser to the property did not afford him with Fourth Amendment protections to the property or a reasonable expectation of

---

where the search and seizure occurred. As a trespasser, Appellant had no 'reasonable expectation of privacy' in the premises.") (citing *Rakas v. Illinois*, 439 U.S. 128 (1978); *Lewis v. State*, 598 S.W.2d 280, 283 (Tex. Crim. App. 1980)); *McCuller v. State*, 999 S.W.2d 801, 804 (Tex. App.—Tyler 1999, pet. ref'd) (holding persons entering home that had no formal lease on the property, had paid no consideration for their occupancy of the premises and whose tenancy was subject to the conditions of the decedent's will were trespassers); *State v. Beckman*, No. 04-12-00406-CR, 2013 WL 2445039, at *2 (Tex. App.—San Antonio Jun. 5, 2013, no pet.) (mem. op., not designated for publication) ("However, a trespasser generally does not have a reasonable expectation of privacy on property upon which he has trespassed, and therefore lacks standing to challenge the legality of governmental search or seizure thereon.") (citing *Douglas*, 695 S.W.2d at 820; *Welch v. State*, No. 03-99-00388-CR, 2000 WL 45546, *2 (Tex. App.—Austin Jan. 21, 2000, no pet.) (mem. op., not designated for publication)); *see also Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013) (holding ineffective assistance was not shown because appellant had no reasonable expectation of privacy in the motel room where he was not a registered guest of the room, had no evidence he was an invited overnight guest or evidence he had a property or possessory interest in the room).

[98] *Davis*, 119 S.W.3d at 367-68 (distinguishing *Minnesota v. Olson* to find that someone that lacked permission to be on the premises having no possessory or property interest had no reasonable expectation of privacy on the premises) (citing *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990); *Black v. State*, 776 S.W.2d 700, 701 (Tex. App.—Dallas 1989, pet. ref'd) (holding a temporary, not overnight guest, was without proprietary or possessory interest in the property and lacked standing to contest a search)).

[99] *See id.* (failing to show legitimate expectation of privacy to the premises when he lacked possessory or property interest showed lack of standing to contest search); *Black*, 776 S.W.2d at 701 (same); *Douglas*, 695 S.W.2d at 820 (holding trespasser "had no 'reasonable expectation of privacy' to the premises."); *Welch*, 2000 WL 45546, at *2 (finding no reasonable expectation of privacy or Fourth Amendment protection to trespasser).

privacy.[100]  To have a legitimate expectation of privacy, a defendant moving to suppress the evidence must not only show a subjective expectation of privacy in the place invaded, but it must also be one "that society is prepared to recognize…as objectively reasonable."[101]  Appellant proffers nothing on appeal, and proffered nothing in the trial court to demonstrate that a trespasser to a property has an objectively reasonable expectation of privacy that society is prepare to recognize that would allow him to bar entry to the owner with a greater right of possession to the property.[102]

The Court of Criminal Appeals explained in *Kothe v. State* that:

> Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded.  He must prove that he was a "victim" of the unlawful search or seizure.  He has no standing to complain about the invasion of someone else's personal rights.  Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation.[103]

---

[100] *See id. et al* (holding no reasonable expectation of privacy or Fourth Amendment protection for trespasser to property).

[101] *Moore*, 395 S.W.3d at 159 (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

[102] *See id.*; *see also* (Appellant's Brief-20-27) (asserting use, but failing to carry appellant's burden of showing standing and a legitimate expectation of privacy society is prepared to recognize).

[103] *Kothe*, 152 S.W.3d at 59 (citations omitted).

Appellant failed in this burden to demonstrate a reasonable privacy interest when the evidence showed that he was a trespasser to the property without lawful permission to enter or remain on the property.

The Court of Criminal Appeals in *Salazar v. State* addressed the trespassing statute and noted that most habitations are not open to the public, and societal norms require a person to seek permission to enter.[104] Habitations, by their very nature of including a doorbell, knocker, or lock show that entry without permission is forbidden.[105] They do not require separate notice that entry is forbidden.[106] The very fact that the Johnson home contained a lock that appellant later removed and replaced, as well as the evidence from Mr. and Mrs. Johnson showed that entry to the home was forbidden and they had not granted appellant or Gates permission to reside there.[107] Lastly, Ms. Johnson swore out an affidavit claiming a trespass to the property before the officer attempted to knock on the door.[108] The trial court had evidence before it from which to conclude appellant had no reasonable expectation of privacy in the home as a trespasser to the property.[109]

---

[104] *Salazar v. State*, 284 S.W.3d 874, 877 (Tex. Crim. App. 2009) (addressing trespass to habitation as lesser-included offense of burglary of a habitation).

[105] *Id.*

[106] *Id.*

[107] *See id.*; *see also* (State's Exhibit No. 1; RRIV-9-10, 18, 25, 30, 41; RRVII-15-16, 19-20, 21, 23, 27, 31, 32, 33, 34, 35).

[108] (RRIV-14, 30)

[109] *See Castro*, 914 S.W.2d at 164-65 (finding no expectation of privacy to the military transient quarters because "a mere right to be somewhere does not grant a person

### III. Ms. Johnson had actual authority to consent to the search

The trial court could have chosen to disregard appellant and Gates's self-serving claims that they rented the property when they had no documentary evidence to support it.[110] They produced no evidence of any written agreements to rent the house or even receipts from putting money in Mr. Johnson's jail account.

On the other hand, Ms. Johnson had not only the handwritten letter from Mr. Johnson reporting the trespass to his home, but also the will that the trial court reviewed that left the home to her and her brother and made her the executor of her deceased father's estate.[111] The documentary evidence supported the trial judge's finding that Ms. Johnson had actual authority over the home and would have had the right consent to a search to remove the trespassers.[112]

In *Hubert v. State*, the Court of Criminal Appeals explained that the defendant lacked a propriety interest in the home "or even any possessory right

standing to contest a search" when he was in someone else's room because as with an unregistered guest he had no reasonable expectation of privacy in the room); *Davis*, 119 S.W.3d at 367 (holding that the evidence supported the conclusion that the defendant had no possessory or ownership rights on the home and therefore no right to exclude others from the property, and therefore could not contest the governmental intrusion onto the property); *Douglas*, 695 S.W.2d at 820 ("Appellant cannot complain of Judie's warrantless entry of the premises or his warrantless search and seizure of the stolen property because the evidence showed that Appellant was a trespasser on the premises where the search and seizure occurred. As a trespasser, Appellant had no "reasonable expectation of privacy" in the premises.").

[110] *See Hubert*, 312 S.W.3d at 561-62; *see also* (RRIV-36, 45-46, 52, 59).
[111] (State's Exhibit No. 1, 2).
[112] *See* (State's Exhibit No. 1, 2).

other than by the grace of his grandfather," and therefore the grandfather had actual authority to consent to the search of his grandson's room.[113] The Court further relied on the lack of any indicium of exclusion such as a lock on the bedroom door to indicate that the defendant had banned the grandfather from entering, *based on an agreement* between the two.[114]

Although, appellant changed the locks on the home, he did so without permission.[115] The evidence even from appellant and Gates did not support the conclusion that they had permission to change the locks.[116] Rather, the credible evidence demonstrated that appellant and Gates were trespassers entering and remaining on the property without the permission of the owners.[117] Accordingly, the trial court could reasonably have determined that Ms. Johnson had actual authority to consent to the search regardless of the permission of appellant.[118]

### IV.  Ms. Johnson had at least apparent authority to consent to the search

Finally, the trial court had could have concluded that Officer Robinson reasonably believed based on the evidence he reviewed that appellant and his

---

[113] *Hubert*, 312 S.W.3d at 564.
[114] *Id.*
[115] (State's Exhibit No. 1; RRIV-25; RRVII-19, 33, 46, 67, 75).
[116] *See id.*; *see also* (RRIV-41, 53) (testifying that he changed the locks to keep Mr. Johnson's neighbor Teddy from continuing access to the home to look after it, but failing to mention that they had permission to do so).
[117] (State's Exhibit No. 1, 2; RRIV-10-14, 18, 24, 25, 26, 28, 29-30; RRVII-16, 18-19, 20, 21-23, 27, 28-29, 31, 33, 34-35).
[118] *See Hubert*, 312 S.W.3d at 564.

20

girlfriend were trespassers to the property and Ms. Johnson had apparent authority to permit him to enter and remove them.[119] A trial court may rely upon unsworn hearsay evidence for purposes of ruling on a pretrial motion to suppress.[120] An officer relies upon the totality of circumstances known to him at the time when determining if the person consenting had authority to do so.[121]

An officer's determination of apparent authority to consent is "judged against an objective standard: would the facts available to the officer at the moment… 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?"[122] Officer Robinson found Ms. Johnson credible and believable.[123] The handwritten letter was supported by his observations at the house.[124] He reviewed the will, and when he looked up the Harris County Appraisal District website, the information on the website matched

---

[119] *See id*. (addressing apparent authority to consent); *see also Rodriguez*, 497 U.S. at 187 ("We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably.").

[120] *Ford v. State*, 305 S.W.3d 530, 535-36 (Tex. Crim. App. 2009) (holding trial judge did not abuse his discretion by relying on unsworn hearsay document in the form of an offense report when denying a defendant's motion to suppress).

[121] *See Rodriguez*, 497 U.S. at 188; *see also Hubert*, 312 S.W.3d at 560 ("Whether it is reasonable under the Fourth Amendment for an officer to rely on consent is a question to be determined by examining the totality of the circumstances.").

[122] *Rodriguez*, 497 U.S. at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

[123] (RRVII-62-63).

[124] (RRIV-19; State's Exhibit No. 1).

the will.[125] Ms. Johnson swore to the trespass in an affidavit.[126] Appellant did not tell Officer Robinson that he leased the home from Mr. Johnson, or anyone for that matter.[127] He did not mention he might have been an invited guest until after the officer had entered with Ms. Johnson's permission.[128]

All the information in Officer Robinson's immediate knowledge indicated that Ms. Johnson had authority over the house, not appellant. Based on the facts known to Officer Robinson at the time, a person of reasonable caution in belief would have reasonably concluded that Ms. Johnson had authority to consent to the search of her home regardless of the consent of apparent trespassers to the property.[129]

The trial court while ruling indicated it found the officer had either actual or at least apparent authority to rely on Ms. Johnson's consent to clear the house of any trespassers.[130] He had authority to enter the house to investigate the trespass, he observed the drugs in plain view, and therefore the search which produced the evidence was lawful.[131]

---

[125] (RRIV-10; State's Exhibit No. 2).
[126] (RRIV-14).
[127] (RRIV-16, 18,
[128] (RRVII-77).
[129] *See* (RRIV-9-14; RRVII-34, 50, 68, 69, 77-78).
[130] (RRIV-68-70).
[131] *Id*.

## V. Conclusion

Appellant's complaints about the lawfulness of the arrest have no bearing on the lawfulness of the search when consent was freely and voluntarily given by someone with actual or apparent authority to give it other than appellant.[132] Appellant presented no evidence which the trial court found credible to conclude Officer Robinson "evicted him unlawfully" rather than merely attempted to remove trespassers at the behest of the actual owner of the property. The evidence showed that both Mr. and Ms. Johnson wanted the trespassers removed because no one had authorized them to in the house.[133]

Therefore, even had appellant had a reasonable expectation of privacy to the home wherein he trespassed, and Ms. Johnson not had actual authority, based on the totality of facts known to Officer Robinson, he reasonably concluded she had apparent authority to consent.[134] This Court should overrule appellant's sole point of error because the trial court properly denied appellant's motion to suppress the search of the house.

───────────◆───────────

---

[132] *See Brick v. State*, 738 S.W.2d 676, 680-81 (Tex. Crim. App. 1987) (holding a consensual search may produce admissible evidence if the consent was not obtained by exploitation of an illegal arrest); *see also Limon v. State*, 340 S.W.3d 753, 757-58 (Tex. Crim. App. 2011) (addressing factors for apparent authority to consent to search).

[133] (State's Exhibit No. 1; RRIV-9-10, 14, 18; RRVII-16, 19, 20, 23, 27, 28).

[134] *See Rodriguez*, 497 U.S. at 188-89.

## **PRAYER**

The State respectfully requests that this affirm the judgment of the trial court.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ *Jessica Caird*

**JESSICA CAIRD**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 24000608
caird_jessica@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument is being served by

EFileTexas.Gov e-filer to the following email address on December 14, 2015:


Sarah V. Wood
Assistant Public Defender
1201 Franklin, 13th Floor
Houston, Texas 77002
Sarah.Wood@pdo.hctx.net




/s/ *Jessica Caird*

**JESSICA CAIRD**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 24000608
caird_jessica@dao.hctx.net

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of **4,258** words, based upon the representation provided by the word processing program that was used to create the document.

/s/ *Jessica Caird*

**JESSICA CAIRD**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
TBC No. 24000608
caird_jessica@dao.hctx.net

26