**Affirmed and Opinion Filed July 18, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01152-CR

### DARRELL BOYD MITCHELL, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F-1575208-I**

## MEMORANDUM OPINION
Before Justices Fillmore, Whitehill, and Boatright
Opinion by Justice Whitehill

A jury found appellant guilty of family violence assault for beating and choking his girlfriend. After finding an enhancement paragraph alleging a previous felony conviction true, the jury sentenced him to sixty years imprisonment.

Based on a jury note requesting further guidance from the court, appellant now complains that the trial court erred by entering a guilty verdict on the aggravated assault charge rather than on an informal verdict on the lesser–included assault charge. Appellant also complains that the trial court erroneously (i) admitted testimony from an unqualified expert; (ii) admitted evidence that did not properly establish his prior convictions; (iii) charged the jury on parole in the punishment phase of trial; and (iv) refused to grant a mistrial after the jury considered parole in assessing punishment. Appellant also argues that the evidence is insufficient to support his conviction because it does not establish his identity or strangulation.

For the reasons discussed below, we conclude that:

(i) the jury note was not an informal verdict, because its content and the surrounding circumstances show that the jury had not reached a final verdict;

(ii) the record shows that the State's strangulation expert was qualified to testify on that topic;

(iii) the evidence regarding appellant's prior convictions was properly admitted as to State Exhibit 15 and we decline to accept appellant's invitation to disregard binding precedent regarding the other challenged exhibits;

(iv) the trial court did not err by giving the statutorily required parole instruction and thus properly denied the related new trial motion; and

(v) the evidence was sufficient for the jury, as the fact finder who assesses witness credibility and weighs the admitted evidence, to find appellant guilty beyond a reasonable doubt.

Accordingly, we resolve appellant's issues against him and affirm the trial court's judgment.

## I.  Background

Appellant shared a room in a rooming house with his girlfriend Eugenia Callicutt.  On the day in question, Callicutt consumed alcohol and crack cocaine and laid down on her bed. Appellant entered the room, and an altercation ensued.

Appellant pulled Callicutt off of the bed, hit her with his hands, banged her head on the floor, choked her, and told her he was going to kill her.  He was subsequently charged with assault by impeding breathing and circulation as a family violence offense.

The case was tried before a jury, which found appellant guilty as charged.  They also found an enhancement paragraph alleging a previous felony conviction true, and sentenced appellant to sixty years imprisonment.  Appellant filed a new trial motion, alleging only that the

verdict was contrary to the law and the evidence. That motion was denied by operation of law. This appeal followed.

## II. Analysis

**A. Ninth Issue: Is the evidence sufficient to support the conviction?**

**1. Standard of Review and Applicable Law**

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the fact finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). The fact finder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murra*y, 457 S.W.3d at 448. We must presume that the fact finder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

Ordinarily, assault occurs when one "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." *Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016); *see also* TEX. PENAL CODE § 22.01. But assault may be enhanced to a third degree felony if committed against a family member "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Marshall*, 470 S.W.3d at 844; TEX. PENAL CODE § 22.01(b)(2)(B). Appellant was charged with the latter offense.

### 2. The Evidence

Appellant's sufficiency argument challenges the evidence concerning: (i) his identity and (ii) strangulation. We conclude, however, that the evidence adduced at trial was sufficient for a rational jury to find beyond a reasonable doubt that appellant was guilty of the charged offense.

Callicutt said that she drank alcohol and was intoxicated on the day of the assault. She got word that appellant was in the hospital, visited him, and told him she was not going to pick him up or bring him home with her.

When Callicutt left the hospital, she purchased crack cocaine and returned to her room. After smoking the crack, she laid down on her bed.

Appellant arrived later, and was angry that Callicutt had not picked him up. He pulled her off of the bed and began hitting her. At points during the beating, both of appellant's hands were around her neck, and at other times he held her neck in his hands while hitting her. She called out for help, and he began to choke her. Her vision and hearing were fading in and out, she could not breathe, and she thought she was going to die. Appellant continued to hit her until the phone rang.

After the phone call, appellant took Callicutt's phone, cleaned her up and dressed her, and took her to the store. Callicutt said she accompanied him because she felt threatened and was unable to leave.

The next day, Callicutt had a co-worker take her to McDonalds, where she called the police. She waited for three hours, but the police never arrived.

Two days later, Callicutt went to Baylor hospital for treatment, and spoke to the police while she was there. She told the police that appellant tried to strangle her. While at the hospital, Callicutt learned that she had a broken nose. She also had a dry, scratchy feeling in her throat and difficulty swallowing for a few days.

Appellant later wrote to Callicutt and apologized for hitting her. But he never admitted the strangulation.

Dr. Grant Herndon from the Dallas County Medical Examiner's office testified for the State over appellant's objection. He explained parts of the human anatomy and medical terminology and described the symptoms a person who survived strangulation might experience. Herndon said that ultimately what happens in strangulation is compression of the neck. A strangulation victim may have bruising, but may also not show any outward signs of injury. Herndon reviewed Callicutt's medical records and said that the entry concerning potential vocal cord paralysis could be a sign of strangulation.

Patti Waterman, another rooming house resident, also testified for the State. Waterman was home the night Callicutt was attacked, and could hear her "being hit really bad." Waterman said that it sounded like Callicutt was screaming and was "being choked to shut up." She called the police and told them, "this girl is getting killed." After the noise died down, Waterman saw Callicutt leave the house with appellant, and she called the police back to tell them that the

couple had gone. Appellant was holding Callicutt's arm, and it did not look as though she accompanied him willingly.

From this evidence, a rational jury could reasonably identify appellant as the attacker. Callicutt and Waterman both identified him, and his letter to Callicutt included an admission that he hit her.

A rational jury could also conclude that the assault included strangulation. Callicutt testified that appellant choked her, and Herndon confirmed that "choking" is how lay people commonly describe strangulation. Callicutt said she could not breathe, and she thought she was going to die. Herndon explained that enough pressure to the neck could collapse a person's trachea, preventing airflow as Callicutt described. Callicutt also said that her vision and hearing were fading in and out and she lost consciousness, which are symptoms that Herndon also described as consistent with strangulation.

Appellant suggests that Callicutt's testimony is not credible because she was intoxicated when the attack occurred. But the jury is the sole judge of witness credibility and the weight given to their testimony and may believe all of a witness's testimony, portions of it, or none of it. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We defer to the jury's resolution of any conflicting inferences from the evidence, and we presume that it resolved such conflicts in favor of the judgment. *Jackson*, 443 U.S. at 326.

On these facts, we conclude that a rational jury could reasonably find beyond a reasonable doubt that appellant committed the charged offense. We thus resolve appellant's ninth issue against him.

**B.      First and Second Issues:  Did the trial court err by entering the wrong verdict?**

During deliberations in the guilt/innocence phase, the jury sent an unsigned note to the court that read:

> We have a procedural question. We are agreed the defendant is guilty of assault family violence. The vote was unanimous, 12-0.
>
> We disagree that the defendant is guilty of assault family violence by impeding breathing or circulation, the vote was 11-1 guilty.
>
> What are our options at this juncture? What are the consequences of each of the options?

The trial court responded, "you have all the law and the evidence. Please continue to deliberate." The jury later returned a unanimous, signed verdict finding appellant guilty of assault family violence by impeding breathing or circulation.

Appellant now argues that (i) the note constituted a verdict on the lesser-included offense of misdemeanor assault and (ii) judgment should have been entered on that informal verdict rather than on the formal verdict for assault family violence by impeding breath or circulation. According to appellant, the formal verdict is void. We disagree because the jury note itself and the surrounding circumstances show that the jury did not reach an informal verdict.

An informal verdict is "one that does not meet the legal requirements of being written or answered as authorized." *Jennings v. State*, 302 S.W.3d 306, 309 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. art. 37.10(a). Additionally, the court of criminal appeals recently noted that, "informal" means "not done or performed in accordance with normal forms or procedures." *See Nixon v. State*, 483 S.W.3d 562, 566 (Tex. Crim. App. 2016) (discussing informal punishment verdicts under article 37.10(b)). But a jury note must be "plainly intended as an acquittal" before it can be considered an informal verdict. *See Antwine v. State*, 572 S.W.2d 541, 543 (Tex. Crim. App. [Panel. Op.] 1978).

Here, the jury note was not plainly intended as an acquittal. Specifically, the note states that the jury had a procedural question and asks the court how to proceed with deliberations. That the jury contemplated further deliberations shows that they were not done.

Moreover, the charge instructed the jury to reach a unanimous verdict, signed by the foreman. The note relayed that the jury had yet to achieve unanimity and it was unsigned.

Furthermore, after the jury resumed deliberations, it reached a verdict that was signed by the foreman and delivered to the court. When the judge polled the jury, all twelve confirmed that the verdict they delivered was their verdict. No one indicated that the note had been intended as a verdict.

Therefore, under these circumstances, we cannot conclude that the note was "plainly intended" as an acquittal verdict on the charged offense. *See id*. Because there was no informal verdict, the trial court did not err by entering the formal verdict the jury properly returned. We overrule appellant's first and second issues.

## C. Third, Fourth, Fifth, and Sixth Issues: The Admission of Evidence

### 1. Standard of Review

We review the trial court's admission of evidence for an abuse of discretion. *See Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). Under this deferential standard, the trial court's evidentiary ruling must be upheld if it is within the "zone of reasonable disagreement." *See Salazar v. State*, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001). This decision is afforded deference because trial courts "are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

Likewise, we review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *See Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness is qualified to testify as an expert in a particular case. *Taylor v. State*, No., 05-14-00821-CR, 2016 WL 7439194, at *8 (Tex. App.—Dallas Dec. 27, 2016, no

pet.) (mem. op., not designated for publication) (*citing Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006)).

Qualification is a two-step inquiry: a witness must first have a sufficient background in a particular field, but a trial judge must then determine whether that background "goes to the very matter on which [the witness] is to give an opinion." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). When determining whether a trial court abused its discretion in ruling on an expert's qualifications, appellate courts may consider a number of factors, including (i) the complexity of the field of expertise, (ii) the degree to which the expert's opinion is conclusive, and (iii) whether the area of expertise is central to resolving the lawsuit. *Rodgers*, 205 S.W.3d at 528.

### 2. Expert Testimony

#### a. What issue did appellant preserve for our review?

Appellant argues that the trial court erred in admitting Dr. Herndon's expert testimony because (i) he was not qualified and (ii) his testimony was unreliable. In the court below, however, appellant objected that Dr. Herndon did not have "a specialty in strangulation," and his testimony was not *relevant* to the proceedings.[1] Although appellant preserved an objection to Herndon's qualifications to provide his testimony in this case, appellant did not object to the reliability of Herndon's testimony. Thus, appellant did not preserve his reliability objection for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006) (expert qualifications are distinct from reliability and relevance and should be evaluated separately);*Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (error not preserved if

---

[1] Specifically, trial counsel said " There's nothing that Dr. Herndon can offer that this jury doesn't already understand and know. And we'd ask that—his use as an expert is not relevant in this case. It's not anything that's outside the understanding of the jury."

appellate complaint does not comport with trial objection). We therefore review only whether the trial court erred in determining that Herndon was qualified to give his expert testimony.

### b. Was Herndon qualified to testify about strangulation in this case?

That appellant physically assaulted Callicutt was unchallenged; the critical dispute was whether he also strangled her in the process. Herndon testified about anatomy and medical terminology, as well as the symptoms of a person who survives strangulation. He opined that the vocal cord injury reflected in Callicutt's medical records could have been from strangulation, but also could have been from other causes.

Appellant does not provide any specific basis for his premise that Herndon was not "properly qualified" to provide his testimony regarding strangulation in this case. Nonetheless, the record reflects that Herndon was sufficiently qualified. Specifically, he completed four years of medical school, followed by four years of anatomic and clinical pathology training at the Cleveland Clinic. And, at the time he testified, he was completing a one-year fellowship in forensic pathology with the Dallas County Medical Examiner's office. During that fellowship, he was trained to recognize strangulation, and he has testified in other assault/strangulation cases in Dallas County. He has also performed 292 autopsies, several of which included signs of strangulation. Herndon said that he could interpret medical terminology and the anatomy of the neck to help the jury better understand the evidence. Furthermore, Herndon's testimony was not far from the jury's common understanding and was not highly technical. *See Rodgers*, 205 S.W.3d at 528 (qualifications less important when expert evidence is close to jury's common understanding).

Based on this record, we conclude that Herndon was qualified to testify about a matter that would assist the jury in deciding the critical dispute. Accordingly, we resolve appellant's third issue against him. *See id.*

–10–

### 3.    The State's Exhibits

Appellant also complains that the trial court erred by admitting State's exhibits 14–25, which documented his prior convictions.  He also argues that exhibit 15 was inadmissible because it lacked fingerprint identification evidence and was insufficient to identify him.

When the State offered exhibits 14-25, trial counsel objected that "all of the exhibits [were] not . . . properly authenticated from the court's origin."  On appeal, appellant asserts that the exhibits were not "properly documented," but does not explain why.  We disagree with appellant concerning these exhibits.

Establishing a prior conviction requires the State to prove that (i) a prior conviction exists and (ii) the defendant is linked to the conviction.  *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. art. 37.07 § 3(a).  But this does not mean that the State has to present any specific document or set of documents.  *See Flowers,* 220 S.W.3d at 921.  "Just as there are more ways to skin a cat, there is more than one way to prove a prior conviction."  *Id.*  Thus, while a certified copy of a final judgment and sentence may be the preferred method, other types of evidence may be used, including documentary evidence with sufficient information to establish identity and a prior conviction.  *Id.*

To begin, appellant's current complaint that exhibit 15 was missing fingerprints and sufficient information to identify him does not comport with his trial objection that the exhibit was not "properly authenticated from the court's origin."  Therefore, the argument was not preserved for our review.  *See* TEX. R. APP. P. 33.1.  But even had it been preserved, the outcome would not differ.  Exhibit 15 contained a judgment and records concerning a prior conviction for possession of a controlled substance.  The State's fingerprint expert testified that the fingerprints on the card in exhibit 15 matched appellant's fingerprints.  This is sufficient authentication.  *See Flowers*, 220 S.W.3d at 921.

–11–

Next, exhibits 14 and 16-25 included certifications authenticating them. Thus, they were properly admitted into evidence.

Therefore, there is no basis to conclude that any of these twelve exhibits were erroneously admitted. Accordingly, we resolve appellant's fourth, fifth, and sixth issues against him.[2]

## D.      Seventh Issue:  Was the jury improperly charged regarding parole?

Appellant's seventh issue argues that the jury charge should not have included the statutorily required parole language in code of criminal procedure article 37.07, § 4, because it misinforms the jury about the law and thus violates the Fourteenth Amendment's Due Process Clause. To this end, he urges us to "reconsider" prior rulings from the Texas Court of Criminal Appeals holding that the instruction does not violate due process. He further argues that the charge was misleading. We conclude however, that the charge was not misleading and did not misinform the jury, and we decline the invitation to ignore binding precedent.

### 1.      Standard of Review and Applicable Law

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). When reviewing a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id*. If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id*.

We begin with the point that the jury charge's purpose is to inform the jury of the relevant law and guide them in applying that law. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). Furthermore, when a defendant is found guilty of aggravated assault, and the

---

[2] Appellant also urges that we reconsider binding precedent applying the Texas Rules of Evidence. This argument was not preserved for our review. *See* TEX. R. APP. P. 33.1 .

–12–

jury assesses punishment, the trial court is statutorily mandated to include the prescribed parole and good time instruction in its charge. *See* TEX. CODE CRIM. PROC. art. 37.07, § 4; *see also Stewart v. State*, 293 S.W.3d 853, 856. (Tex. App.—Texarkana 2009, pet. ref'd) (depending on offense and whether there is a deadly weapon finding, trial court is required to select from three alternative parole instructions in the statute). The instruction applicable here explains generally the concepts of good conduct time and parole; states the defendant's eligibility for parole is one-fourth the actual sentence, or fifteen years, whichever is less, without considering any good conduct time earned; and states that no one can predict whether parole or good time might be applied to the defendant. *See* TEX. CODE CRIM. PROC. art. 37.07, § 4(b); *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). On appeal, the reviewing court presumes the jury followed these instructions as given. *Luquis*, 72 S.W.3d at 366.

### 2.     The Charge

Here, the charge included the required statutory instruction. The court of criminal appeals has held that including an instruction concerning parole and good conduct time does not violate a defendant's due process rights, even if the parole instruction does not apply. *See id.* at 362–368. Under stare decisis, we are bound to follow court of criminal appeals precedent. *See Jefferson v. State*, No 05-15-00477-CR, 2016 WL 3749396, at *4, (Tex. App.—Dallas 2016, pet. ref'd) (mem. op., not designated for publication). Therefore, we decline appellant's request to do otherwise and conclude that including the parole and good conduct instruction was not error.

Moreover, appellant has not demonstrated that the parole instruction was "misleading." Indeed, he fails to explain how a jury might be misled by the instruction, or what it might do as a consequence.

Further, we disagree that the charge was misleading. Appellant was charged with aggravated assault, a third degree felony. *See* TEX. PENAL CODE § 22.01(b)(2)(B). As the charge

–13–

stated, appellant would be eligible for parole when "his actual calendar time served plus good conduct time equals one-fourth the sentence imposed, or 15 years, whichever is less." TEX. GOV'T CODE § 508.145(f). Likewise, the term "good conduct" is not misleading; it was expressly defined in the charge, and explained that, "Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation." Therefore, we conclude that the trial court did not err by giving the statutory parole instruction, and resolve appellant's seventh issue against him.

**E.     Eighth Issue:   Was it an abuse of discretion to deny appellant's request for a mistrial?**

During the punishment phase, the jury sent the judge a note asking whether appellant would only serve fifteen years if he was sentenced to a life term. Appellant's counsel objected that the jury was "violating their oath as jurors" because they were considering parole, and moved for a mistrial. After the jury returned its sixty-year punishment verdict, appellant made the same objection and re-urged the motion which the trial court denied.

Appellant's eighth issue argues the trial court erred in denying his motion for mistrial because the jury violated the court's punishment charge by considering the effect of parole in assessing punishment. As discussed below, we disagree.

**1.     Standard of Review and Applicable Law**

We review the denial of a mistrial for an abuse of discretion, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

Discussion of parole by the jury during its deliberation is not proper. *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998). Historically, this impropriety was reversible error only on the defendant's showing: (i) a misstatement of the law; (ii) asserted as a fact; (iii) by one professing knowledge of the law; (iv) on which other jurors rely; and (v) who for that reason

–14–

changed their vote to a harsher punishment. *See Sneed v. State,* 670 S.W.2d 262, 266 (Tex. Crim. App. 1984).

But the rule of evidence concerning juror testimony was amended after the *Sneed* decision, and several of our sister courts have suggested that *Sneed* is no longer viable in light of the amended rule.[3] *See Davis v. State*, 119 S.W.3d 359, 365 (Tex. App.—Waco 2003, pet. ref'd); *Hart v. State*, 15 S.W.3d 117, 123 (Tex. App. —Texarkana 2000, pet. ref'd); *Hicks v. State*, 15 S.W.3d 626, 630 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The Texas Court of Criminal Appeals, however, has yet to decide the issue. *See Davis*, 119 S.W.3d at 365; *Melvin v. State*, No. 10-09-00210-CR, 2010 WL 1611072 at *1 (Tex. App.—Waco 2010, pet ref'd) (mem. op., not designated for publication); *see also Salazar v. State*, 38 S.W.3d 141, 148 n.3 (Tex. Crim. App. 2001) (a Rule 606(b) objection would seem to preclude use of the *Sneed* test, but declining to address the issue as waived).

But we need not decide whether the *Sneed* analysis still applies under proper proof, nor do we endeavor to apply the test here. *See*, *e.g., Salazar*, 38 S.W.3d at 147 (*Sneed* may still apply under proper proof). Appellant's only argument for a mistrial was that the jury considered parole in assessing punishment. We limit our inquiry accordingly. *See* TEX. R. APP. P. 33.1.[4]

## 2.     Was the trial court's ruling outside the zone of reasonable disagreement?

Appellant's argument is premised on the notion that the jury note itself demonstrates that the jury considered parole when determining his sentence. We disagree for several reasons.

---

[3]Current TEX. R. EVID. 606(b), amended after the decision in *Sneed*, provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

[4] Appellant makes no effort to demonstrate that any of the *Sneed* factors were met. Instead, he appears to suggest that the test is inapplicable because "the *Sneed* burden on the defense is a violation of due process." This argument manifests, however, for the first time on appeal.

First, the jury charge contained the standard curative instruction which states:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006) (describing instruction as curative). In other words, the jury could consider parole as a general concept, but was specifically instructed to not consider parole or good-conduct time when assessing an appropriate punishment. *See Luquis*, 72 S.W.3d at 366.

Second, absent contrary evidence, we presume jurors understood and followed the trial court's instructions in the jury charge. *Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011). Standing alone, the note does not overcome this presumption. *See Colburn,* 966 S.W.2d at 519–520 (note questioning whether parole possible for defendant sentenced to life was alone insufficient to rebut presumption jurors followed instruction not to consider parole); *Simmons v. State,* 100 S.W.3d 484, 496 (Tex. App.—Texarkana 2003, pet. ref'd) ("Even if the [jury's] note constitutes evidence the jury discussed these matters at a preliminary point, we presume the jury followed the court's instructions and, thereafter, did not consider these matters in reaching their verdict."); *Arceo v. State*, No. 05–07–00315–CR, 2008 WL 384438, at *2 (Tex. App.—Dallas Feb. 14, 2008, no pet.) (mem. op., not designated for publication) (jury note concerning defendant's eligibility for deferred adjudication parole did not rebut presumption jurors properly followed instructions not to consider parole and good conduct time in assessing punishment); *Lewis v. State*, No. 07–07–0425–CR, 2008 WL 553614, at *2 (Tex. App.—Amarillo Feb. 28, 2008, no pet.) (mem. op., not designated for publication) ("While the jury asked about good time and parole in its note, that alone is not enough to rebut the presumption that it followed the trial court's directive and the instruction in the charge.").

Third, Appellant did not include alleged juror misconduct in his motion for new trial, nor did he otherwise prove that it occurred.

Accordingly, despite the jury's note, the record does not establish that the jury ignored the court's admonition and considered parole in assessing appellant's sentence. Therefore, the trial court was within its discretion to find that appellant did not show that he was entitled to relief, and we resolve appellant's eighth issue against him.

## III. Conclusion

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
Tex. R. App. P. 47
161152F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DARRELL BOYD MITCHELL, Appellant

No. 05-16-01152-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F-1575208-I.
Opinion delivered by Justice Whitehill.
Justices Fillmore and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 18, 2017.